## JOHNNY McKAY v. STATE OF MARYLAND

[No. 1290, September Term, 1975.]

*Decided July 29, 1976.*

The cause was argued before THOMPSON, MOORE and LOWE, JJ., and CHARLES E. ORTH, JR., Associate Judge of the Court of Appeals of Maryland, specially assigned.

*Arnold M. Zerwitz* and *George E. Burns, Jr., Assistant Public Defenders*, with whom was *Alan H. Murrell, Public Defender*, on the brief, for appellant.

*Albert Gallatin Warfield, III, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City*, and *Gordon Boone, Assistant State's Attorney for Baltimore City*, on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Johnny McKay went to trial before a jury in the Criminal Court of Baltimore upon a general plea of not guilty to an

indictment presenting that he committed armed robbery and seven related offenses. The trial ran a normal course to the retirement of the jury to consider their verdicts. The State presented its case. Motions for judgment of acquittal to all but the first count, charging armed robbery, the third count, charging robbery, and the eighth count, charging the use of a handgun in the commission of a crime of violence, were granted at the close of evidence offered by the State. The defense put on its case. Motions for judgment of acquittal to the three remaining counts were denied at the close of all the evidence. Counsel made their arguments to the jury, the judge instructed, and the jury retired to deliberate the verdicts.

After deliberating an hour the jury returned to the courtroom. Upon the usual inquiry by the Clerk of the Court the jury announced through its forelady that they had agreed upon a verdict of not guilty as to the first count, but as to the third count that they were unable to arrive at a verdict: "As to the third count we could not come to a unanimous decision." At this point the judge said:

> "Ladies and gentlemen of the jury, I thought I explained to you that you cannot come in with a verdict unless it is unanimous, otherwise you cannot return if you have not agreed unanimously. You must return to the jury room. If you cannot arrive at a verdict, then it is known as what is a hung jury and the entire verdict is thrown out, but you cannot come in and say you find for a certain portion of the verdict and that you cannot agree on the other portion. You must make a definite determination, a unanimous determination."

The jury again retired, deliberated about an hour and a half and returned to the courtroom. At this point defense counsel asked to approach the bench, and there was a bench conference, at the conclusion of which defense counsel said, in open court: "I have discussed this with my client, Your Honor." The judge requested counsel to "come back up to the bench", and another bench conference ensued. The

proceedings at these bench conferences were not recorded. When counsel returned to the trial table, the judge announced:

"Outside of the presence of the jury counsel for the Defendant, Mr. [Karl B.] Brockman, advised the Court that his client would accept a majority vote on the third count, which could not be unanimously agreed upon between the jurors. Is that correct?"

The transcript of the proceedings reads:

"MR. BROCKMAN: That is correct, Your Honor. I explained to him that a vote for acquittal or conviction means that he could be found guilty on that count. Of course, the other two counts they said they had reached a verdict on.

DEFENDANT MC KAY: Have they — have ya'll already had the number of the vote?

MR. BROCKMAN: No, we don't know what it is, that's what is going to be decided now. It's not even, it's not six and six, I don't think.

THE COURT: Nobody knows what the vote is. If you have more votes it's not guilty and if you have seven to six it's not guilty.

Let me explain it to you so that you will understand. You are asking the Court to have the jury render a verdict on this case based on a majority vote. Under the law of this State you have a right to insist upon a unanimous vote and if they do not come in with a unanimous vote you have a right for retrial, that is your constitutional right.

DEFENDANT MC KAY: What will that mean, I'll have to be tried again?

THE COURT: Yes.

DEFENDANT MC KAY: The whole trial?

MR. BROCKMAN: The whole trial.

DEFENDANT MC KAY: We'll take what's up.

MR. BROCKMAN: You will take what the majority is?

DEFENDANT MC KAY: Yes.

THE COURT: The only thing is that I assume what they said earlier, and they have indicated that the first count is for acquittal and there seems to be a tie-up on the third count. I do not know what the third count is, guilty or not guilty, and as a result of what happens now if they come in with a guilty verdict on the third count, then it is guilty on the third count. If they come in with a majority for guilty then it would be guilty on the third count. If the third count is a majority vote in your favor and they find for acquittal, then you will be found not guilty, that is the chance you will be taking. I want to explain everything to you because you have an absolute right under the law to have the whole trial tried all over again if you want to, and I will give you your option if you want to talk to anybody."

McKay said he would like to talk to his lawyer and the jury were directed to return to the jury room. After McKay and his counsel conferred, there was another bench conference at defense counsel's request. Again the proceedings were unrecorded. Then, in open court, but out of the jury's presence, the judge queried McKay:

"THE COURT: Now, Mr. McKay, you have had an opportunity to talk to your lawyer and I think he explained the situation very clearly to you. Do you have any members of your family here with you?

DEFENDANT MC KAY: Yes, sir.

THE COURT: Do you want to talk to any members of your family?

DEFENDANT MC KAY: No, sir.

THE COURT: You do not?

DEFENDANT MC KAY: No, sir.

THE COURT: What is your option, do you want to accept a majority vote from the jury on any of the counts that they could not agree upon or do you want to have the case retried?

DEFENDANT MC KAY: Take the majority vote.

THE COURT: You want a majority vote?

DEFENDANT MC KAY: Yes, sir.

THE COURT: Do you understand what a majority vote is?

DEFENDANT MC KAY: Yes, sir.

THE COURT: I have explained it to you and your attorney has explained it to you; is that right?

DEFENDANT MC KAY: Yes, sir."

The jury returned to the jury box and their verdicts were received:

"THE CLERK: Johnny McKay, stand up, please. Members of the jury, have you agreed upon a verdict?

THE FORELADY: Yes.

THE CLERK: Madam Forelady, how do you say, is Johnny McKay guilty or not guilty as to Indictment No. 57501019 as to the first count?

THE FORELADY: Not guilty.

THE CLERK: As to the third count?

THE FORELADY: The third count was undecided.

THE CLERK: What would the vote be as to the third count?

THE FORELADY: The count was nine for guilty and three for not guilty.

THE CLERK: The majority vote is guilty. As to the eighth count?

THE FORELADY: Not guilty.

THE CLERK: Harken to the verdict as the Court has recorded it, you say that Johnny McKay as to Indictment No. 57501019 as to the first count is not guilty, as to the third count guilty by majority vote, and as to the eighth count not guilty."

The jury was polled and the verdict of nine for conviction, three for acquittal on the third count was confirmed. A

sentence of ten years incarceration under the jurisdiction of the Department of Correction was imposed.[1] McKay noted a timely appeal.

The basic issue for decision concerns the requirement of unanimity in criminal jury trials. Is unanimity of the jury's verdict basic to the concept of trial by jury so as to be an imperative requirement of a legal verdict, or is it a right of the accused which he may waive?

Trial by jury was looked upon as "the glory of the English law." It was deemed "the most transcendant privilege which any subject can enjoy, or wish for, that he cannot be affected either in his property, his liberty, or his person, but by the unanimous consent of twelve of his neighbors and equals." 3 W. Blackstone, *Commentaries* *379. The elements of a trial by jury at the common law were set out in *Patton v. United States*, 281 U. S. 276, 288 (1930): "(1) That the jury should consist of twelve men, neither more nor less; (2) that the trial should be in the presence and under the superintendence of a judge having power to instruct them as to the law and advise them in respect of the facts; and (3) that the verdict should be unanimous." "When Englishmen colonized what came to be called the United States, they brought with them their common law heritage, including the right to jury. Although later scholars have disputed the Magna Carta as the source of that right, the colonists, as did other Englishmen, appealed to that declaration for the protection of the right to trial by jury. The first ordinance passed by the Plymouth Colony in 1623 required that all criminal facts be tried by a jury of twelve honest men. In 1774, the colonies were party to the National Declaration of Rights which included the right to jury as the 'birthright and inheritance' of all Englishmen. Among the grievances

---

1. After the verdict was rendered, defense counsel told the court that he had informed McKay of the rights to file a motion for a new trial, to take an appeal and to request a review of sentence. McKay informed his counsel that he did not desire to move for a new trial and would like to be sentenced at this time. The judge observed: "I can sentence him at this time or we can obtain a pre-sentence report." McKay stated through his counsel that he would like to be sentenced "right now." The judge complied with this request.

cited in the Declaration of Independence was the frequent deprivation by the Crown of the colonists' right to jury." (footnotes omitted) 22 DePaul L. Rev. 635, 637 (1973). See *Maxwell v. Dow*, 176 U. S. 581 (1900), dissenting opinion of Mr. Justice Harlan at 605, which at 609-610 traces the history of trial by jury in England and colonial America. As early as 1367, unanimity was required under English case law, even though the particular reasons for its initial development had abated. 26 U. Miami L. Rev. 277, 279 (1971).[2] See 2 Pollock & Maitland, *History of English Law before the Time of Edward I*, (2d ed. 1898, reissued by Cambridge University Press, 1968) 625.

The Constitution of the United States doubly guarantees the right to jury in criminal trials. Article III, § 2, provides: "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury . . . ." The sixth amendment declares: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . . ." *Patton* construed the jury trial contemplated by Art. III and the sixth amendment. It said, at 288:

> "That it means a trial by jury as understood and applied at common law, and includes all the essential elements as they were recognized in this country and England when the Constitution was adopted, is not open to question."

Thus, as the common law jury required the unanimous verdict of twelve men, the federal jury could require nothing less. That is the rule today. See *Maxwell v. Dow, supra; Thompson v. Utah*, 170 U. S. 343 (1898).[3] It seemed, however,

---

**2.** The case note points out, *id:* "Unanimity was first required in England during the early development of the present day jury system. Originally, the jury consisted of twelve witnesses who would testify for the winning party. Naturally, such testimony had to be unanimous." The note quotes P. Devlin, Trial by Jury 48 (1956): "[W]hen the twelve witnesses were translated into judges [jurors], the unanimity rule, notwithstanding that its original significance had then departed, remained with them."

**3.** The Court in *Maxwell* left no doubt that "jury" as used in the United States Constitution meant twelve persons who could render verdicts only

that although twelve member juries and unanimity were constitutionally required in federal courts, they were not necessities in state courts. *Maxwell* held that the states were not bound by the mandates of the United States Constitution; due process did not require states to have the same provisions as required in federal courts by the first eight amendments, and the privileges and immunities clause did not prohibit the states from having different jury provisions from those required by the federal constitution. 176 U. S. at 595. Selective incorporation, making the Bill of Rights applicable to the states through the fourteenth amendment eroded this position. The non-incorporation views of *Maxwell* were repudiated in *Duncan v. Louisiana*, 391 U. S. 145, 155 (1968). *Duncan* specifically held that the sixth amendment provision for trial by jury was applicable to the states. *Id.*, 154-155. The note in 43 U. Cin. L. Rev. *supra*, at 586-587, points out that ordinarily when the Court held that a given amendment was applicable to the states, the federal standards also applied. See for example, *Aguilar v. Texas*, 378 U. S. 108 (1964); *Malloy v. Hogan*, 378 U. S. 1 (1964); *Mapp v. Ohio*, 367 U. S. 643 (1961). Thus, it seemed that states would be required to have twelve member juries rendering unanimous verdicts. Not so. *Williams v. Florida*, 399 U. S. 78, 86 (1970) held that the fourteenth amendment did not require a state to have a twelve member jury.[4] *Williams* left open the question of whether a unanimous verdict would be required in the state courts by the due

---

by unanimous consent. 176 U. S. at 586. The dissenting opinion of Mr. Justice Harlan agreed with this interpretation. *Id.*, at 609-611. Unanimity was not the issue in *Thompson* but the Court used strong dictum indicating that unanimity was required in criminal cases. 170 U. S. at 355. See Note, *Smaller Juries and Non-Unanimity Analysis and Proposed Revision of the Ohio Jury System*, 43 U. Cin. L. Rev. 583, 584 n. 13, 585 n. 19 (1974).

4. In *Williams* the Court did not find the framers' intent clear after reviewing the history of the sixth amendment, and concluded that none of the three basic purposes of a jury — to prevent government oppression, to promote community participation, and to share responsibility in the guilt-finding process — were seriously hampered by a lesser number of jurors. The Court did not indicate a minimum number of jurors that would be required, although it said that six was above the undefined minimum. 399.U. S. at 91, n. 28. The number must be large enough to promote group deliberation and to allow for participation of a reasonable cross-section of the community. *Id.*, at 102.

process clause.[5] The question was resolved in the companion cases of *Apodaca v. Oregon,* 406 U. S. 404 (1972) and *Johnson v. Louisiana,* 406 U. S. 356 (1972).[6] *Apodaca* was convicted by a vote of eleven to one, the Oregon constitution permitting the jury to render a verdict with the concurrence of ten jury members. *Johnson* was convicted by a vote of nine to three, under a Louisiana constitutional provision allowing verdicts with the concurrence of nine jurors. Each argued that due process required unanimity. The Supreme Court first looked to the history of unanimity and of the sixth amendment and, as in *Williams,* was unable to divine the "intent of the Framers" as to what is meant by a jury. *Apodaca,* at 407-410. It looked, therefore, to other than purely historical considerations and focused upon the function served by the jury in contemporary society. In *Duncan,* 391 U. S. at 156, the Court said that the purpose of trial by jury is to prevent oppression by the government by providing a "safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge." "Given this purpose," the Court said in *Williams,* 399 U. S. at 100, "the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen . . . ." *Apodaca* concluded that a "requirement of unanimity, however, does not materially contribute to the exercise of this commonsense judgment." 406 U. S. at 410. Even in cases where unanimity is not required, the judgment will still be made by the accused's peers. *Johnson* dealt with the argument that unanimity also served the purpose of giving substance to the

---

**5.** The Court observed, 399 U. S. at 100, n. 46:

"We intimate no view whether or not the requirement of unanimity is an indispensable element of the Sixth Amendment jury trial. While much of the above historical discussion applies as well to the unanimity as to the 12-man requirement, the former, unlike the latter, may well serve an important role in the jury function, for example, as a device for insuring that the Government bear the heavier burden of proof."

**6.** Mr. Justice White's opinion for the Court in *Apodaca* was a plurality opinion. It was concurred in by Mr. Chief Justice Burger, Justices Blackmun and Rehnquist. Justice Powell concurred in the judgment only. Four dissenting opinions were filed. The Court in *Johnson* divided 5-4.

reasonable doubt standard required by the due process clause in criminal cases. This argument is bottomed on the entity theory as to jury verdicts. The entity theory suggests that the jury returns its verdicts only as a whole, and that the reasonable doubt of one juror creates a reasonable doubt in the whole jury. Thus unanimity is required. *Johnson* rejected this. It apparently followed the theory which views the jury as composed of individuals. The doubt of one juror does not permeate the entire jury's verdict. The reasonable doubt standard is retained but the verdict of less than unanimity lessens the number of jurors who must be convinced that the standard has been met. "In our view disagreement of three jurors does not alone establish reasonable doubt, particularly when such a heavy majority of the jury, after having considered the dissenters' views, remains convinced of guilt. That rational men disagree is not in itself equivalent to a failure of proof by the State, nor does it indicate infidelity to the reasonable-doubt standard." 406 U. S. at 362. The Court pointed out that even in the federal system where unanimity is required, a new trial is given if the jury cannot reach a verdict. If the entity theory were followed, one juror's reasonable doubt would permeate the entire jury and the defendant would be acquitted. 406 U. S. at 362-363.[7]

What *Johnson* and *Apodaca* teach is that there is a double standard for a jury trial. The federal jury remains as at the common law, requiring a unanimous verdict. The states, on the other hand, are free to experiment with the jury within

---

7. The Court also rejected the argument that less than unanimity would lead to disregard of minority views. It said, at 361:

"We have no grounds for believing that majority jurors, aware of their responsibility and power over the liberty of the defendant, would simply refuse to listen to arguments presented to them in favor of acquittal, terminate discussion, and render a verdict. On the contrary it is far more likely that a juror presenting reasoned argument in favor or acquittal would either have his arguments answered or would carry enough other jurors with him to prevent conviction. A majority will cease discussion and out-vote a minority only after reasoned discussion has ceased to have persuasive effect or to serve any other purpose — when a minority, that is, continues to insist upon acquittal without having persuasive reasons in support of its position."

the confines of due process. It is clear that in criminal trials, state courts are permitted to have less than twelve jurors, and the jury may render non-unanimous verdicts.[8]

We have seen that the states are not prohibited by the federal constitution from having a jury in a criminal trial which does not meet the standards required by that constitution for a federal trial. That is, within the confines of due process, a state may provide for a jury in a criminal case which consists of twelve or less members whose verdict need not be unanimous. We look now to see if Maryland has so provided.

The Maryland Constitution of 1776, Art. III, provided for trial by jury according to the course of the common law. See *Apodaca v. Oregon, supra,* n. 3 at 408. This was retained in subsequent constitutions. The Declaration of Rights to the Constitution of Maryland adopted in 1867 declared by Article 5 "That the Inhabitants of Maryland are entitled to the Common Law of England, and the trial by Jury, according to the course of that Law . . . ." We have seen that the common law required jury unanimity in criminal trials.[9] Art. 21 of the Declaration spells it out: "That in all criminal prosecutions, every man hath a right . . . to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty." [10]

The Maryland constitutional provisions with respect to trial by jury have two aspects. The first concerns the

---

**8.** It appears from the opinions filed in *Johnson* and *Apodaca* that Justices White, Burger, Blackmun and Rehnquist believed that unanimity is not required under either the state or federal systems, but Justices Marshall, Douglas, Brennan and Stewart were of the opinion that unanimity is required in both. Mr. Justice Powell thought that the sixth amendment requires jury unanimity but should not be applied to the states. The effect of this four-four-one split is that five Justices thought that unanimity should be required in federal cases and that five Justices thought that unanimity should not be required in state cases.

As is indicated *supra,* we found most helpful and freely used the enlightening discussions of the constitutional requirements of unanimous jury verdicts in criminal trials in the Note in 43 U. Cin. L. Rev. 583 (1974), in 22 DePaul L. Rev. 635 (1973), and in 26 U. Miami L. Rev. 277 (1971).

**9.** *Apodaca,* 406 U. S., n. 2 at 407, traces the origins of the unanimity rule.

**10.** See Smith v. State, 17 Md. App. 217, 219-229 (1973), *cert. den.,* 269 Md. 766 (1973).

obtaining of a jury trial. The second concerns the unanimity of the verdict of the jury obtained. The first bestows a "right." Art. 21 expressly provides that in criminal prosecutions every man "hath a right" to a trial by jury. The right so bestowed may be waived. In *State v. Zimmerman*, 261 Md. 11, 12 (1971), the Court of Appeals said: "We do not consider whether an accused may elect a court trial, thereby waiving a jury trial. That is established." Maryland Rule 741 provides for the waiver: "An accused may elect to be tried by jury or by the court." [11]

The Maryland constitution is silent as to the number of jurors. Under the common law, as we have seen, a jury must consist of twelve persons. But the common law may be changed within constitutional limitations, by statute, rule or judicial decision, and, as we have indicated, the federal constitution does not require a jury in a state criminal case to consist of twelve members. Maryland has tempered the common law in this regard by rule. Rule 743, although affirming that a jury in a criminal cause shall consist of twelve persons, permits the parties, at any time before verdict, to stipulate in writing with the approval of the court that a jury shall consist of any number less than twelve. [12]

The second aspect of Art. 21 regarding a jury trial concerns the unanimity of the jury's verdict. After bestowing the "right" to a trial by jury, the Article continues, "without whose unanimous consent he ought not to be found guilty." This phrase does not bestow a right but imposes a mandate. [13] Over a century ago the Court of

---

11. The right to a jury in the federal court may also be waived. In Patton v. United States, *supra*, the Court said, at 298, that Art. 3, § 2 of the Constitution of the United States "is not jurisdictional, but was meant to confer a right upon the accused which he may forego at his election. To deny his power to do so is to convert a privilege into an imperative requirement."

12. Md. Rule 544 governs juries in civil causes: "The parties may stipulate that the jury shall consist of any number less than twelve, or that a verdict or a finding of a stated majority of the jurors shall be taken as the verdict or finding of the jury." See Md. Rule 1, § a 1.

13. The American Heritage of the English Language (1969) states that "ought" used as an auxiliary verb followed by an infinitive with *to* indicates: "(1) Obligation or duty . . . ; (2) Expediency or prudence . . . ; (3) Desirability . . . ." We think it obvious that as used in Art. 21 "ought" indicates "obligation or duty."

Appeals said in *League v. State,* 36 Md. 257, 266 (1872): "to make a legal verdict all the jurors must agree." Cf. *Sherrill v. State,* 14 Md. App. 146, 157-158 (1972). This view is affirmed by Md. Rule 758, § a, which flatly asserts: "The verdict shall be unanimous . . . ." [14] This is in accord with the common law. Not only has Maryland not departed from the common law requirement of jury unanimity but it has expressly affirmed it by constitutional provision implemented by rule. See *Williams v. State,* 60 Md. 402, 403 (1883); *Givens v. State,* 76 Md. 485, 488 (1893); *Coby v. State,* 225 Md. 293, 299 (1961); *Maloney v. State,* 17 Md. App. 609, 622 (1973). We point out that although Md. Rule 544 pertaining to juries in civil causes permits parties to stipulate that a verdict of a stated majority of the jurors shall be taken as the verdict of the jury, see note 12 *supra,* no such provision appears in Md. Rule 758, § a with regard to juries in criminal causes.

We summarize. In Maryland criminal trials the accused may waive a jury trial and elect to be tried by the court. By stipulation of the parties and approval of the court, a jury in a criminal cause may consist of any number less than twelve members which is consistent with due process of law. But no matter what the make-up of the jury, the verdict must be unanimous.

Having found that unanimity is an imperative requirement of a legal verdict in a Maryland criminal prosecution before a jury, and not a right of the accused which he may waive, the verdict under the third count of the indictment filed against McKay was illegal because it was not unanimous. We hold that the trial court had no jurisdiction to receive it. See Md. Rule 1085. The judgment must be reversed.[15]

---

14. No constitutional imperative of jury unanimity carries over to panels of judges sitting as the trier of fact. *League* at 266; *Sherrill* at 157.

15. We observe that even if the unanimity of the jury were a right which could be waived by a defendant, we would have serious doubt that McKay's actions constituted a valid waiver. The classic definition of "waiver" was enunciated in Johnson v. Zerbst, 304 U. S. 458, 464 (1938) as "an intentional relinquishment or abandonment of a known right or privilege." The determination of whether there has been an intelligent waiver "must depend, in each case, upon the particular facts and circumstances

The verdicts of not guilty on the first and eighth counts represented the unanimous consent of the jurors.[16] They were hearkened and recorded and McKay stands acquitted under them. He may be retried under the third count on which the jury in fact "hung." He may not be retried under the first and eighth counts of which he was acquitted by the jury or on the second, fourth, fifth, sixth and seventh counts of which he was acquitted by the court upon grant of motion for judgment of acquittal. See *Pugh v. State*, 271 Md. 701 (1974) and cases cited therein.

Although McKay told the judge at the punishment stage of the proceedings that he did not desire to file a motion for a new trial, he subsequently did file such motion prior to noting an appeal. The record before us does not disclose a disposition of the motion. He also applied for a review of sentence, and a sentence review panel ordered that the sentence remain unchanged. But thereafter he filed two motions for reconsideration of the sentence. These apparently were not acted upon. In the light of our decision, any questions arising from the failure to dispose of the motion for a new trial or the applications for reconsideration of sentence are moot.

*Judgment reversed; case remanded for a new trial.*

surrounding that case, including the background, experience, and conduct of the accused." *Id.* McKay sought to be bound by a majority verdict of the jury because he was told by the court that the alternative was "to have the whole trial tried all over again." He obviously did not want to be retried on the armed robbery count carrying a heavier punishment upon conviction. But once the jury, by unanimous verdict, acquitted him of that offense, he could not be retried thereon. In the circumstances, we do not believe that McKay can be said to have made an intelligent waiver.

16. We do not reach whether the court may properly receive verdicts as to counts on which the jury agrees and declare a mistrial as to other counts on which they do not agree. McKay for obvious reasons, does not raise the point, and the State does not mention it.