STATE OF MARYLAND *v.* JOHNNY McKAY

[No. 108, September Term, 1976.]

*Decided July 5, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Deborah K. Handel, Assistant Attorney General,* on the brief, for appellant.

*Martha Villmoare,* with whom were *Alan H. Murrell, Public Defender, Arnold M. Zerwitz* and *George E. Burns, Jr., Assistant Public Defenders,* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

We granted certiorari in this case primarily to decide whether unanimity of a jury verdict under the Maryland Constitution is an imperative requirement that cannot be waived by the defendant in a criminal case. Following appellee's purported waiver of jury unanimity, he was convicted of robbery by a nine-to-three vote of a jury in the Criminal Court of Baltimore. He then appealed the conviction to the Court of Special Appeals, which held that unanimity could not be waived and therefore reversed the conviction. *McKay v. State,* 32 Md. App. 451, 462-63, 362 A. 2d 666 (1976). Although we think a unanimous jury verdict is a right guaranteed the accused, which he can waive, we affirm the judgment of the Court of Special Appeals because in this instance the waiver did not meet constitutional standards.

Subsequent to his indictment on a charge of armed robbery and seven related offenses, appellee came on for trial before a jury in the Criminal Court of Baltimore. At the conclusion of the State's case, the court granted judgment of acquittal as to all but the first count charging armed robbery, the third count charging robbery, and the eighth count charging use of a handgun in the commission of a crime of violence. Ultimately, those charges were submitted to the jury. The jury deliberated for approximately one hour; then, although the forelady had stated initially that the jury was in agreement, she proceeded to announce that the jury

had found appellee not guilty under the first count, but "could not come to a unanimous decision" as to the third count. The court then admonished the jury that it must make a "unanimous determination." With that, the jury resumed its deliberations, but returned 90 minutes later, still unable to reach a unanimous verdict on the third count.

With appellee present during the third of a series of bench conferences, his attorney informed the court that appellee would accept a majority vote on the third count.[1] The court reminded appellee that he had "a right to insist upon a unanimous vote," or alternatively, a "consitutional right" to a "retrial." Appellee then informed the court that he would accept a majority verdict.[2] After being cautioned by the court that he had "an absolute right under the law to have the *whole trial* tried *all* over again," appellee requested permission to consult privately with counsel. (Emphasis added). The court excused the jury for a few minutes; then, following his conference, appellee declined an opportunity to

---

1. "THE COURT: Outside of the presence of the jury counsel for the Defendant, Mr. Brockman, advised the Court that his client would accept a majority vote on the third count, which could not be unanimously agreed upon between the jurors. Is that correct?

"MR. BROCKMAN: That is correct, Your Honor. I explained to him that a vote for acquittal or conviction means that he could be found guilty on that count. Of course, the other two counts they said they had reached a verdict on.

"DEFENDANT MC KAY: Have they — have ya'll already had the number of the vote?

"MR. BROCKMAN: No, we don't know what it is, that's what is going to be decided now. It's not even, it's not six and six, I don't think.

"THE COURT: Nobody knows what the vote is. If you have more votes it's not guilty and if you have seven [sic] to six it's not guilty."

2. "[THE COURT:] . . . Under the law of this State you have a right to insist upon a unanimous vote and if they do not come in with a unanimous vote you have a right for retrial, that is your constitutional right.

"DEFENDANT MC KAY: What will that mean, I'll have to be *tried again?*

"THE COURT: Yes.

"DEFENDANT MC KAY: The *whole trial?*

"MR. BROCKMAN: The *whole trial.*

"DEFENDANT MC KAY: We'll take what's up.

"MR. BROCKMAN: You will take what the majority is?

"DEFENDANT MC KAY: Yes," (All emphasis added).

confer with members of his family who were present and again advised the court that he would accept "a majority vote." [3]

The jury then returned, and the forelady announced that appellee had been found not guilty under counts one and eight, but nine jurors had voted "guilty" as to count three and three had voted "not guilty." The clerk hearkened the verdict as one of guilty under count three, which was confirmed by a poll of the jury.

In reversing the conviction, the Court of Special Appeals expressed the view that the provision in Article 21 of the Maryland Declaration of Rights for "a speedy trial by an impartial jury, without whose *unanimous* consent [the accused] ought not to be found guilty" does not "bestow a right but imposes a mandate." *McKay v. State,* 32 Md. App. at 462 (emphasis added). Accordingly, held the court, "unanimity is an imperative requirement of a legal verdict in a Maryland criminal prosecution before a jury, and not a right of the accused which he may waive." *Id.* at 463.

## I

The unanimous jury verdict traces its ancestry to the Middle Ages. *Apodaca v. Oregon,* 406 U. S. 404, 407-408, 92 S. Ct. 1628, 32 L.Ed.2d 184 (1972); *see Johnson v. Louisiana,* 406 U. S. 356, 383 n. 2, 92 S. Ct. 1620, 32 L.Ed.2d 152 (1972) (Douglas, J., dissenting). Although its origins are shrouded in obscurity, it is safe to say that the various reasons offered for its development have long since ceased to support its continued vitality.[4]

By the 18th Century, the unanimous verdict had

---

3. "THE COURT: What is your option, do you want to accept a majority vote from the jury on any of the counts that they could not agree upon or do you want to have the case retried?
   "DEFENDANT MC KAY: Take the majority vote.
   "THE COURT: You want a majority vote?
   "DEFENDANT MC KAY: Yes, sir.
   "THE COURT: Do you understand what a majority vote is?
   "DEFENDANT MC KAY: Yes, sir.
   "THE COURT: I have explained it to you and your attorney has explained it to you; is that right?
   "DEFENDANT MC KAY: Yes, sir."

4. ". . . One theory is that unanimity developed to compensate for the lack of other rules insuring that a defendant received a fair trial. . . . A

established itself as a basic attribute of the common law jury. Thus, wrote Blackstone, "the founders of the English law have with excellent forecast contrived . . . that the truth of every accusation, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbors, indifferently chosen, and superior to all suspicion." 4 W. Blackstone, Commentaries *349-50. More expressively, perhaps, he wrote that "in order to avoid intemperance and causeless delay, [the jury] are to be kept without meat, drink, fire, or candle, unless by permission of the judge, till they are all unanimously agreed." 3 *id.* at *375.[5] That unanimity was therefore at common law an essential element of the revered trial by jury is beyond any question:

> "Upon these accounts the trial by jury ever has been, and I trust ever will be, looked upon as the glory of the English law. . . . [I]t is the most transcendant privilege which any subject can enjoy, or wish for, that he cannot be affected either in his property, his liberty, or his person, but by the unanimous consent of twelve of his neighbours and equals. . . ." 3 *id.* at *379.[6]

*Cf. Singer v. United States,* 380 U. S. 24, 27-28, 85 S. Ct. 783, 13 L.Ed.2d 630 (1965) (right to trial by jury could not be waived at common law).

---

*second theory* is that unanimity arose out of the practice in the ancient mode of trial by compurgation of adding to the original number of 12 compurgators until one party had 12 compurgators supporting his position; the argument is that when this technique of afforcement was abandoned, the requirement that one side obtain the votes of all 12 jurors remained. . . . A third possibility is that unanimity developed because early juries, unlike juries today, personally had knowledge of the facts of a case . . . . The final explanation is that jury unanimity arose out of the medieval concept of consent. Indeed, '[t]he word consent (*consensus*) carried with it the idea of *concordia* or unanimity. . . .' " Apodaca v. Oregon, 406 U. S. 404, 407 n. 2, 92 S. Ct. 1628, 32 L.Ed.2d 184 (1972) (citations omitted).

5. So necessary was unanimity, it was held, that "if the jurors do not agree in their verdict before the judges are about to leave the town, though they are not to be threatened or imprisoned, the judges are not bound to wait for them, but may carry them round the circuit from town to town in a cart." 3 W. Blackstone, Commentaries *376 (footnotes omitted).

6. In light of the history of the unanimous verdict, it is interesting to note that it is no longer regarded as essential to liberty in England, where it has been abandoned in certain specified instances. Criminal Justice Act of 1967, § 13, as amended by the Juries Act of 1974, § 17. *See* Duncan v. Louisiana, 391 U. S. 145, 182, 88 S. Ct. 1444, 20 L.Ed.2d 491 (1968) (Harlan, J., dissenting).

## II

Until *Williams v. Florida*, 399 U. S. 78, 91-93, 90 S. Ct. 1893, 26 L.Ed.2d 446 (1970), the decisions of the Supreme Court proceeded on the assumption that the trial by jury established by the Federal Constitution [7] meant a jury trial as understood and applied at common law, and included all the essential elements recognized in this country and in England when the Constitution was adopted. *Patton v. United States*, 281 U. S. 276, 288-90, 50 S. Ct. 253, 74 L. Ed. 854 (1930); *Maxwell v. Dow*, 176 U. S. 581, 586, 20 S. Ct. 448, 44 L. Ed. 597 (1900). Those elements were the 12-man jury, the presence and superintendence of a judge having the power to instruct the jury on the law and to advise them upon the facts, and the unanimous verdict. *Patton v. United States*, 281 U. S. at 288 (dictum). Thus, it was said, unanimity was "required where the Sixth and Seventh Amendments apply." *Andres v. United States*, 333 U. S. 740, 748, 68 S. Ct. 880, 92 L. Ed. 1055 (1948). So readily was it assumed, apparently, that a unanimous jury was required in criminal prosecutions that the issue of the constitutionality of non-unanimous verdicts never arose in the Supreme Court until this decade.

Despite the premise reflected in those prior decisions, however, Mr. Justice White wrote for the court in *Williams v. Florida*, 399 U. S. at 92-93, that "the relevant constitutional history casts considerable doubt on the easy assumption in our past decisions that if a given feature existed in a jury at common law in 1789, then it was necessarily preserved in the Constitution." The history of the jury trial provision in Article III was characterized as " 'very scanty,' " and as shedding "little light either way" on the intended correlation between the Article III trial by jury and the attributes of the jury at common law. *Id.* at 93.

The Court noted that the version of the Sixth Amendment introduced by James Madison in the House explicitly

---

**7.** The Federal Constitution contains two provisions relating to trial by jury in criminal prosecutions. Article III, Section 2, Clause 3 provides: "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury . . . ." The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."

provided for " 'an impartial jury of freeholders of the vicinage, with the requisite of unanimity for conviction, of the right of challenge, and other accustomed requisites ....' " *Williams v. Florida,* 399 U. S. at 94 (footnote omitted).[8] Because the Senate objected to the House version, particularly to the "vincinage" requirement, the matter was referred to a conference committee. What finally emerged was the Sixth Amendment in its present form. Absent were the provisions for "unanimity," the "accustomed requisites," and the "vicinage" requirement. From this, the Court found it plausible to conclude that the deletions were of a substantive nature. "[W]here Congress wanted to leave no doubt that it was incorporating existing common-law features of the jury system, it knew how to use express language to that effect." *Id.* at 97. In holding that the Sixth Amendment, as applied to the states through the Fourteenth Amendment, was not violated by a state law providing for a six-man rather than a 12-man jury in noncapital cases, the *Williams* Court leaned heavily on what it regarded as this absence of demonstrated intent by the framers "to equate the constitutional and common-law characteristics of the jury." *Id.* at 99.

While reaching this decision, the Court expressly left open the question whether unanimity "is an indispensable element of the Sixth Amendment jury trial." *Id.* at 100 n. 46. Although four members of the Supreme Court have concluded, subsequently, that unanimity is not such an indispensable element, *see Johnson v. Louisiana,* 406 U. S. 356 (plurality opinion of White, J.), unanimity remains a requirement in federal prosecutions. *Id.* at 369-70 (Powell, J., concurring); *accord, Andres v. United States,* 333 U. S. at 748-49; *Patton v. United States,* 281 U. S. at 288-90; *Maxwell v. Dow,* 176 U. S. at 586.[9]

---

8. Madison's ready acquaintance with the unanimous verdict is possibly explained by its prior inclusion in the very Bill of Rights "with which he was most familiar — that of his own Virginia." *See* Frankfurter & Corcoran, *Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury,* 39 Harv. L. Rev. 917, 974 (1926).

9. Implicit in this view is the proposition that a statute imposing less-than-unanimous verdicts in federal criminal prosecutions could not pass muster under the Sixth Amendment. *See* Patton v. United States, 281

Although we need not decide the issue, since the parties have not raised it, the federal question posed by this case is not whether a defendant may be required to accept a less-than-unanimous verdict in a federal prosecution, but whether, under the Federal Constitution, a defendant may consent to such a verdict in a state criminal trial. The Supreme Court has not decided this question, but its decisions in the companion cases of *Johnson v. Louisiana,* 406 U. S. 356, and *Apodaca v. Oregon,* 406 U. S. 404, would appear to resolve this issue.

In *Johnson,* the defendant contended that the reasonable' doubt standard, implicit in the Due Process Clause of the Fourteenth Amendment, required a unanimous verdict, whereas he had been convicted under a Louisiana law which required merely nine votes to convict. The Court rejected the contention, as it found no basis for holding that the vote by the nine jurors failed, as to each one, to reflect an honest belief beyond a reasonable doubt that guilt had been established, or that the disagreement of three jurors demonstrated a reasonable doubt by the jury as a whole.

Because *Apodaca* was tried after the Supreme Court decided *Duncan v. Louisiana,* 391 U. S. 145, 88 S. Ct. 1444, 20 L.Ed.2d 491 (1968), the defendant there was able to argue that the Sixth Amendment right to a jury trial — which *Duncan* made applicable to his state trial through the Due Process Clause of the Fourteenth Amendment — required the jury to reach a unanimous verdict. Thus, he claimed, his Sixth Amendment right was violated by his conviction on a 10-to-two vote, which was sufficient for conviction under the Oregon Constitution. As we said, four justices concluded that the Sixth Amendment required unanimity in neither federal nor, therefore, state prosecutions; four others believed unanimity was required in both federal and state trials; and Justice Powell believed that the Federal Constitution required unanimity in federal, but not in state

U. S. 276, 290, 50 S. Ct. 253, 74 L. Ed. 854 (1930) ("These common-law elements [of a jury trial] are embedded in the [Federal Constitution], and are beyond the authority of the legislative department to destroy or abridge.")

proceedings. The result was that a majority of the Court rejected Apodaca's contention and held that a state law imposing less-than-unanimous verdicts in state criminal prosecutions is not violative of the Federal Constitution.

Since *Johnson* and *Apodaca* hold that neither the Sixth nor the Fourteenth Amendment is offended by a state constitutional provision imposing less-than-unanimous verdicts in all but capital cases, despite the defendant's refusal to consent, then it seems to us that neither are those same federal constitutional amendments abridged when the defendant does give his consent. We limit our inquiry, then, to the question posed at the outset — whether unanimity, under the Maryland Constitution, is an imperative requirement that cannot be waived.

### III

Two provisions in the Maryland Declaration of Rights are relevant here. The first, Article 5, provides in pertinent part:

> "That the Inhabitants of Maryland are entitled to the Common Law of England, and the trial by Jury, according to the course of that Law . . . ."

The second and more important provision here is Article 21, which, save one minor punctuation change, is in precisely the same form as it was when designated § 19 in the original Declaration of Rights framed on November 11, 1776. It provides, in relevant part:

> "That in all criminal prosecutions, every man hath a right . . . to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty."

Whether this provision fixes unanimity of a criminal jury verdict as an imperative requirement that cannot be waived is therefore the question presented here.

As we indicated earlier, the Supreme Court has never been confronted with the question whether unanimity of a jury verdict in either federal or state criminal trials is an

imperative requirement under the Federal Constitution, or is instead a right or privilege guaranteed the accused which he may waive.[10] Nevertheless, the Court's decision in *Patton v. United States*, 281 U. S. 276, is instructive. There, the Court said that the jury trial afforded by Article III and the Sixth Amendment is "a trial by jury as understood and applied at common law, and includes all the essential elements as they were recognized in this country and England when the Constitution was adopted." *Id.* at 288. This, as we observed earlier, included the element of unanimity. In holding that an entire jury or the presence of any of its members could be waived by the defendant with the consent of the court and the prosecution, the *Patton* Court concluded "that the framers of the Constitution simply were intent upon preserving the right of trial by jury primarily for the protection of the accused." *Id.* at 297.

If, as we assume, the unanimous jury verdict could not be waived at common law, it was only because waiver of the jury trial itself,[11] or any right intended for the protection of the accused, was virtually forbidden in the early common law practice. It is safe to say that the conditions justifying the common law rule no longer exist. Although waiver of jury trial was recognized during the colonial period, particularly in Maryland and in Massachusetts, *see Singer v. United States*, 380 U. S. at 28-31, there is no evidence available that waiver of unanimity ever became an issue during that period.

Despite the provision in Article 5 entitling inhabitants of Maryland "to the Common Law of England, and the trial by Jury, according to the course of that Law," Article 21

---

**10.** As we shall observe later, the issue has arisen in only one federal case, Hibdon v. United States, 204 F. 2d 834, 838 (6th Cir. 1953), in which the court held that unanimity could not be waived in a federal prosecution.

**11.** Beginning in the Thirteenth Century, defendants refusing to submit to jury trial "were tortured until death or until they 'consented' to a jury trial." Singer v. United States, 380 U. S. 24, 85 S. Ct. 783, 13 L.Ed.2d 630 (1965). Many defendants were apparently willing to risk that fate rather than submit to a jury trial, not because of any inherent distrust of the jury system, but because of their desire to avoid a conviction and thereby to prevent forfeiture of their lands and the resultant hardships for their descendants. *Id.* at 27 n. 3.

embraces the Maryland colonial experience. Waiver of the right to trial by jury was recorded as early as 1642, only eight years after settlement of St. Mary's, IV Archives of Maryland 165 (1642), and juries of 10 and 11 men were summoned on at least a few occasions in civil suits. LXX Archives xv. 72, 160 (1681-82). Early proceedings of the General Assembly are also illuminating. An act of 1642 stated:

> ". . . the Defendt. in any cause civill or Criminall may put himself for tryall upon the judge or Court or, upon his Country or may wage his Law in cases allowable by the law of England[.] if both parties joyn in the tryall it Shall be tryed according to their agreemt." I Archives of Maryland 151, 186 (1642).

Thus, by 1776, Maryland had long since departed from the English common law, by judicial decision or legislative enactment, in permitting waiver of not only trial by jury, but also at least one of its tranditional elements, the 12-man jury. *Cf. Singer v. United States*, 380 U. S. at 27-31 (jury trial not waivable at common law); *Patton v. United States*, 281 U. S. at 288 (common law jury consisted of "twelve men, neither more nor less"). What this Court said at a much earlier time respecting the provision in Article 5, pertaining to the common law, seems particularly apposite here:

> ". . . [Article 5] has no reference to adjudications in England anterior to the colonization, or to judicial adoptions here, of any part of the common law, during the continuance of the colonial government, but to the common law in mass, as it existed here, either potentially, or practically, and as it prevailed in England at the time, except such portions of it as are inconsistent with the spirit of that instrument [the Declaration of Rights], and the nature of our new political institutions. . . ." *State v. Buchanan*, 5 H. & J. 317, 358 (1821).

*Accord, County Council v. Investors Funding*, 270 Md. 403, 417, 312 A. 2d 225 (1973); *McGraw v. State*, 234 Md. 273,

275-76, 199 A. 2d 229, *cert. denied,* 379 U. S. 862 (1964); *Lickle v. Boone,* 187 Md. 579, 582, 51 A. 2d 162 (1947).

There is no historical support, then, for an interpretation of Article 21 that would make jury unanimity an imperative requirement as opposed to a right which can be waived. Nor are our early statements in *Ford v. State,* 12 Md. 514, 549 (1859), and *League v. State,* 36 Md. 257, 265-66 (1872), to the contrary. In *Ford,* the issue in a murder case was simply whether a poll of the jury produced a proper verdict, since 11 jurors had merely responded "guilty," without specifying the degree of murder, after their foreman had apparently announced that the defendant was guilty of first degree murder. In this context, citing what is now Article 21, the Court said:

> " 'The verdict is the *unanimous* decision made by a jury and reported to the court . . . .' *Unanimity* is indispensable to the sufficiency of the verdict . . . ." *Ford v. State,* 12 Md. at 549 (emphasis in original).

In *League,* a case tried before a tribunal of two judges, the contention was advanced that the result was an acquittal because the judges were unable to agree. In rejecting that argument, the Court simply distinguished a trial by the court, in which a majority must concur to render a proper verdict, from a trial by jury in which "to make a legal verdict all the jurors must agree." *League v. State,* 36 Md. at 266. Neither of these cases, nor any other decided by this Court, is authority for ascribing to Article 21 an intent of its framers to make jury unanimity an imperative requirement that could not be waived.

The contemporary era furnishes even less support for the "imperative requirement" interpretation, particularly in light of the fact that other provisions in the Declaration of Rights protecting defendants in criminal cases, however fundamental they have been regarded by our society, are subject to waiver.[12] Article 22, which declares that "no man

---

12. Since other provisions of the Declaration of Rights also employ the word "ought," we attach no special significance to that word, and treat Article 21 as if it read "shall." *But see* E. Cahn, *A New Kind of Society,* in

ought to be compelled to give evidence against himself in a criminal case," may, "like all other privileges," be waived. *Allen v. State*, 183 Md. 603, 612, 39 A. 2d 820 (1944). No less a right than trial by jury itself, as we have emphasized at length, could be waived well before independence. *State v. Zimmerman*, 261 Md. 11, 14-19, 273 A. 2d 156 (1971). The poll of the jury, the very procedure by which unanimity is confirmed, is an "absolute right" of "constitutional dimension," *Ross v. State*, 24 Md. App. 246, 253, 330 A. 2d 507 (1975), *rev'd on other grounds*, 276 Md. 664, 350 A. 2d 680 (1976), which can be waived by the simple failure to exercise it. Similarly, a mere failure to object to the admission of illegally seized evidence amounts to a waiver of that valuable right. *Jenkins v. State*, 232 Md. 529, 532-33, 194 A. 2d 618 (1963); *Porter v. State*, 230 Md. 535, 536-37, 187 A. 2d 870 (1963). Finally, the defendant can also waive the right to counsel, *State v. Blizzard*, 278 Md. 556, 575, 366 A. 2d 1026 (1976); *State v. Fowler*, 259 Md. 95, 103-04, 267 A. 2d 228 (1970); the right to confront the witnesses against him, *State v. Collins*, 265 Md. 70, 79-81, 288 A. 2d 163 (1972); and the right to a speedy trial, *Bonner v. Director*, 237 Md, 445, 447, 206 A. 2d 708 (1965). *See also Jones v. State*, 279 Md. 1, 6-16, 367 A. 2d 1 (1976).

If, therefore, all these fundamental rights can be waived by the accused, there is no rationale for an interpretation denying him waiver of unanimity, which, like all the rights just enumerated, is generally regarded as existing primarily for his benefit. This was the view expressed by the Kentucky Court of Appeals in *Ashton v. Commonwealth*, 405 S.W.2d 462, 571 (Ky. 1965), *rev'd on other grounds*, 384 U. S. 195, 86 S. Ct. 1407, 16 L.Ed.2d 469 (1966), the only other state court to address the question presented here. As that court asked:

---

The Great Rights 4-5 (E. Cahn ed. 1963). It is interesting to note, moreover, that within months before the framing of Article 21 on November 11, 1776, our two neighbors employed stronger language to provide for unanimity: "without whose unanimous consent he *cannot* be found guilty," Virginia Bill of Rights, § 8; "without the unanimous consent of which jury he *cannot* be found guilty," Pennsylvania Bill of Rights, § 9. (all emphasis added). *See* Frankfurter & Corcoran, *supra* note 8, at 974 nn. 259-61.

"On what logical basis is unanimity a more sacred right?" *Id.*

In the only case to decide whether unanimity could be waived in a federal prosecution, *Hibdon v. United States,* 204 F. 2d 834, 838 (6th Cir. 1953), the court held that it could not. There, 27 minutes after it had retired to deliberate, a jury returned with the report that it could not agree on a verdict. The court, on its own initiative, inquired of the parties whether they would accept a majority verdict, and they expressed their consent. A poll of the jury disclosed that it stood nine-to-three for conviction on one count and 10-to-two for conviction on the other, whereupon the court instructed the clerk to enter a verdict of guilty on both counts. On appeal, the court reversed, relying on three alternative grounds. First, Rule 31 (a) of the Federal Rules of Criminal Procedure, which provides that "The verdict shall be unanimous," was read as mandating unanimity. Second, the court believed that the requirement of unanimity was "inextricably interwoven" with the reasonable doubt standard. Third, the court was of the opinion that the defendant's purported waiver did not meet constitutional standards because it was the judge himself who initiated the suggestion that a majority verdict be accepted.

Apart from the question whether the waiver here met constitutional standards, about which we will say more later, we remain unpersuaded by the reasoning in *Hibdon.* As we noted earlier, the Supreme Court in *Johnson v. Louisiana,* 406 U. S. at 359-63, soundly refuted the argument that the reasonable doubt standard, implied in the Due Process Clause of the Fourteenth Amendment, requires a unanimous jury verdict in all criminal cases. With respect to the language of Rule 31 (a), Maryland Rule 758 also provides that a jury verdict "shall be unanimous." Nevertheless, we have never held that the word "shall," which abounds throughout the Maryland Rules of Procedure, imports not simply a mandatory meaning, but one so imperative that there can be no waiver. We recognize, of course, that Rule 544 expressly provides for non-unanimous verdicts in civil cases if the parties so stipulate. But we reject the view that

this alone elevates Rule 758 to "imperative requirement" status.

Our holding that the accused may waive a unanimous jury verdict, however, is not without its qualifications. As the Supreme Court said with respect to waiver of jury trial in *Patton v. United States*, 281 U. S. at 312, "before any waiver can become effective, the consent of [the prosecuting attorney] and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant." We find no constitutional impediment to conditioning a waiver of unanimity on the consent of the prosecuting attorney and the trial judge when, if either refuses to consent, the result is simply that the jury must return a unanimous verdict — the very right that the Maryland Constitution guarantees the accused. *Cf. Singer v. United States*, 380 U. S. at 36 (trial by jury required where government refused to consent to waiver).

We hold that a defendant may waive unanimity of a trial jury in criminal cases, provided not only that the court and the prosecution consent, but also that the waiver by the defendant conforms strictly with applicable constitutional standards.[13] Here, both the court and the prosecution signified their agreement. We pass, then, to the question whether the consent of the accused met applicable constitutional standards.

## IV

Since a unanimous jury verdict is a fundamental constitutional right guaranteed the defendant in a criminal case, it can be dispensed with only when he "competently and intelligently" waives that right. *Johnson v. Zerbst*, 304 U. S. 458, 469, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); *accord, Davis v. State*, 278 Md. 103, 110, 361 A. 2d 113 (1976) (rights

---

13. A caveat is in order. We deal here with a nine-to-three vote, which comes within the ambit of the "substantial majority" referred to by Mr. Justice White for the Court in Johnson v. Louisiana, 406 U. S. 356, 362, 92 S. Ct. 1620, 32 L.Ed.2d 152 (1972). Whether a bare seven-five vote would withstand scrutiny under the Federal Constitution remains to be seen. *See id.* at 366 (Blackmun, J., concurring).

waived by guilty plea); *State v. Renshaw,* 276 Md. 259, 265, 347 A. 2d 219 (1975) (right to counsel); *see State v. Wilson,* 279 Md. 189, 201, 367 A. 2d 1223 (1977) (right not to consent to searches); *Harrison v. State,* 276 Md. 122, 138, 345 A. 2d 830 (1975) (right to privileged communications); *State v. Fowler,* 259 Md. at 104 (*Miranda* rights). Whether there was an intelligent waiver depends "upon the particular facts and circumstances." *Johnson v. Zerbst,* 304 U. S. at 464. We examine the facts and circumstances here.

When the jury returned to the courtroom for the first time after commencing its deliberations, the forelady reported that the jury had already voted unanimously to acquit appellee under the first count charging armed robbery. By the time defense counsel first indicated to the court that appellee might accept a majority vote on the third count charging robbery, appellee undoubtedly suspected, if he did not know, that he also had been found not guilty under the eighth count charging the handgun violation.

Appellee's paramount concern was apparent from the colloquy with the court: whether a mistrial for lack of unanimity on the third count would mean a new trial not only on that count, but also on the first and eighth, and possibly even on those which had been the subject of judgment of acquittal. This was evident from his repeated questions concerning the "whole trial." Not only did the court remain silent when defense counsel advised his client that a retrial would mean "the whole trial," but the court itself informed appellee that he had "an absolute right under the law to have the whole trial tried all over again" and asked him whether he wished to accept "a majority vote" on count three or "have the case retried?" Only then did appellee reply that he would "take the majority vote."

Given what we regard as a clearcut understanding on the part of appellee that a mistrial for lack of unanimity on the third count would have meant, at the very least, a retrial on counts one and eight as well, even though the jury had found him not guilty of those charges, his decision to accept a majority verdict on the third count was hardly surprising. His consent, however, did not amount to an intelligent and

competent waiver, since it rested on a grossly inaccurate premise. That he could not be retried on the charges of which he had been acquitted, without being placed in double jeopardy, was settled in *Pugh v. State,* 271 Md. 701, 706-707, 319 A. 2d 542 (1974). No consent founded on such defective grounds can amount to an intelligent and competent waiver of a constitutional right.

The State urges, however, that we relegate appellee to post-conviction relief, since it is impossible to ascertain from the record what appellee's understanding was in agreeing to accept a majority verdict. It relies for this argument on *State v. Zimmerman,* 261 Md. at 23-25. There, however, the facts were wholly dissimilar to those here. Zimmerman's contention on direct appeal was that the record failed to show an affirmative waiver of a jury trial or an election of a court trial. This Court believed that the record did reflect such a showing and suggested that post-conviction procedure was designed for such cases in which additional evidence was necessary to determine whether a prisoner was entitled to further relief. This is not such a case. Here, we are presented with the converse of *Zimmerman,* since the record, without the need for further evidence, unmistakably reflects a waiver lacking compliance with constitutional requirements.

We hold that the consent to the non-unanimous jury verdict did not meet applicable standards for waiver of a constitutional right. For this reason, and not because unanimity is an imperative requirement that cannot be waived, we agree with the Court of Special Appeals that appellee is entitled to a new trial on count three, charging robbery, and that he stands acquitted of all other charges brought in the indictment.

> *Judgment of the Court of Special Appeals affirmed; costs to be paid by the Mayor and City Council of Baltimore.*