**Daniel WAITE, Sr., Appellant,**

v.

**Margaret Susan WAITE, Appellee.**

No. 14–00–01330–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 21, 2001.

---

David Eldon Moody, Lubbock, for appellants.

Judith Ann Leecraft, Austin, Richard M. Grimes, Russell S. Post, Houston, for appellees.

Panel consists of Justices EDELMAN, FROST, and MURPHY.*

## PLURALITY OPINION

PAUL C. MURPHY, Senior Chief Justice.

Daniel Waite, Sr. ("appellant") appeals the trial court's denial of his request for a temporary injunction to restrain the enforcement of section 6.001 of the Texas Family Code which allows the granting of "no-fault" divorces. Specifically, appellant argues that section 6.001 violates 1) the Free Exercise and Establishment Clause of the U.S. Constitution and Texas Constitution article 1, section 6; 2) the "free institutions" clause of the Texas Constitution; and 3) the "open courts" provision of the Texas Constitution. Additionally, appellant asserts that section 6.502 of the Texas Family Code constitutes an unconstitutional invasion of his privacy under the Texas Constitution, as well as a violation of the Free Exercise Clause of the Texas Constitution. Lastly, appellant contends that the trial court erred in awarding attorney's fees to appellee. We affirm.

## I. Standard of Review

The denial of a temporary injunction is reviewed for a clear abuse of discretion. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex.1993); *Landry's Seafood Inn & Oyster Bar—Kemah, Inc. v. Wiggins*, 919 S.W.2d 924, 926 (Tex.App.—Houston [14th Dist.] 1996, no writ). The trial court's legal conclusions are reviewed *de novo*. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992); *Eakin v. Acosta*, 21 S.W.3d

---

* Senior Chief Justice Paul C. Murphy sitting by assignment.

405, 407 (Tex.App.—San Antonio 2000, no pet.).

## II. Background

This is a divorce case in which Margaret Waite ("appellee") is seeking a divorce from appellant. Section 6.001 of the Texas Family Code provides:

> On the petition of either party to a marriage, the court may grant a divorce without regard to fault if the marriage has become insupportable because of discord or conflict of personalities that destroys the legitimate ends of the marital relationship and prevents any reasonable expectation of reconciliation.

TEX. FAM.CODE ANN. § 6.001 (Vernon 1998). Invoking this "no-fault" divorce provision of the Texas Family Code, appellee alleged that "[t]he marriage has become insupportable because of discord or conflict of personalities between Petitioner and Respondent that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation." On September 19, 2000, appellant filed his first amended plea to the jurisdiction and his second amended petition for declaratory judgment, attacking the constitutionality of section 6.001 of the Texas Family Code. In his second amended petition for declaratory judgment, appellant requested that the trial court issue a temporary injunction enjoining appellee from relying upon various statutes as the basis of her cause of action.[1] The trial court held a hearing on appellant's plea to the jurisdiction and petition for declaratory judgment in which appellant submitted evidence through the use of expert witnesses. After hearing all of the evidence, the trial court denied both the plea to the jurisdiction and the petition for declaratory judgment, and pursuant to the Declaratory Judgment Act, awarded attorney's fees to appellee.[2]

## III. Discussion

Whether section 6.001 is unconstitutional as a violation of the U.S. and/or Texas Constitutions is a question of law which we review *de novo*.

## A. "Legitimate Ends of Marriage" and "Reconciliation"—Sacramental or Civil in Nature?

Appellant initially challenges the constitutionality of section 6.001 on the basis that it violates, 1) the Establishment Clause of the U.S. Constitution, because it entangles the judiciary in religious issues; and 2) the Free Exercise Clause of the U.S. Constitution and the "rights of conscience" guarantee under the Texas Constitution, because it requires the judiciary to interfere in a religious dispute. Appellant premises both of these arguments on the presumption that the terms "reconciliation" and "legitimate ends of marriage" are objectively religious. We disagree with this presumption. We also disagree with appellee's contention that there exists two distinct forms of marriage—sacramental and civil. Precedent supports neither proposition.

Our analysis of cases addressing the role of marriage in society reveals that there is only one form of marriage which serves different purposes. *See Maynard v. Hill,* 125 U.S. 190, 210–11, 8 S.Ct. 723, 31 L.Ed. 654 (1888) ("It is also to be observed that,

---

**1.** It is the trial court's denial of this temporary injunction which is before us on appeal. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(4) (Vernon Supp.2001) (permitting interlocutory appeal of orders granting or refusing to grant a temporary injunction).

**2.** We note that no written order appears in the record before us regarding the award of attorney's fees to appellee.

whilst marriage is often termed by text writers and in decisions of courts a civil contract, generally to indicate that it must be founded upon the agreement of the parties, and does not require any religious ceremony for its solemnization, it is something more than a mere contract."); *Grigsby v. Reib*, 105 Tex. 597, 153 S.W. 1124, 1130 (1913) ("The term, 'civil contract,' as applied to marriage, means nothing now, for there does not exist the church's claim that it is a religious rite; there is nothing to be differentiated by the language; it is obsolete."); *Gowin v. Gowin*, 264 S.W. 529, 540 (Tex.Civ.App.—Fort Worth 1924), *aff'd*, 292 S.W. 211 (Tex.1927) (Conner, C.J., dissenting) ("[T]he main purpose of calling marriage a civil contract is to negative the idea that it is an ecclesiastical sacrament, or that in the eye of the law it is controlled by the mandates or dogmas, or subject to the observance of the rituals or regulations, of any particular churches or sects.").

With regard to the purposes marriage serves for society, "[marriage] is an institution, in the maintenance of which in its purity the public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress." *Maynard v. Hill*, 125 U.S. 190, 211, 8 S.Ct. 723, 31 L.Ed. 654 (1888). It is this public interest in marriage which allows the state to regulate not only the creation of the marriage, but its dissolution as well. *Id.* at 205, 8 S.Ct. 723 (noting that the legislature "prescribes the age at which parties may contract to marry, the procedure or form essential to constitute marriage, the duties and obligations it creates, its effects upon the property rights of both, present and prospective, and the acts which may constitute grounds for its dissolution"); *Leon v. Torruella*, 99 F.2d 851, 855 (1st Cir. 1938) ("[I]t has been recognized from time out of memory that it is within the power of the legislature of a state to enact laws defining who, when, and under what circumstances its citizens and subjects may marry and the causes of divorce upon which the marriage status may be dissolved whenever the public good or justice to either or both of the parties would thereby be preserved."); *In re Marriage of Richter v. Richter*, 625 N.W.2d 490, 494 (Minn.Ct.App.2001).

 Appellant asserts that any determination by the trial court of what constitutes the "legitimate ends of marriage" or the reasonable expectation of "reconciliation" necessarily involves a religious determination. Legal precedent, however, suggests otherwise. We believe, as was true in 1888, that the trial court is not being asked to make a religious determination, but rather to determine whether the continuance of the marriage relation has been rendered intolerable to the other party, and productive of no possible benefit to society. *See Maynard*, 125 U.S. at 205, 8 S.Ct. 723. The Texas legislature could rationally conclude that public policy requires an accommodation to the unfortunate reality that a marital relationship may terminate without regard to the fault of either marital partner, and that such a relationship should therefore be dissolvable in law upon a judicial determination that the marriage has become insupportable.[3] *See Joy v. Joy*, 178 Conn. 254, 423 A.2d 895, 896 (1979). Accordingly, we overrule appellant's assertion that section

---

**3.** This opinion should not be read as approving of "no-fault" divorce. Whether the "no-fault" divorce movement in Texas has accomplished the purposes and goals as envisioned by the Texas Legislature is a matter left solely to the determination of the citizens of Texas and their elected representatives. We limit our review to the constitutionality of the "no-fault" divorce statute.

6.001 violates, 1) the Establishment Clause of the U.S. Constitution because it entangles the judiciary in religious issues; and 2) the Free Exercise Clause of the U.S. Constitution and the "rights of conscience" guarantee under the Texas Constitution, because it requires the judiciary to interfere in a religious dispute.

### B. Free Institutions Clause of the Texas Constitution

Additionally, appellant argues that section 6.001 violates the "free institutions" clause of the Texas Constitution. Specifically, appellant asserts that the institution of marriage is one of the institutions protected by article I, section 1 of the Texas Constitution. We disagree.

■ Article I, section 1 of the Texas Constitution provides as follows:

Texas is a free and independent State, subject only to the Constitution of the United States, and the maintenance of our free institutions and the perpetuity of the Union depend upon the preservation of the right of local self-government, unimpaired to all the States.

TEX. CONST. art. I, § 1. While we recognize that marriage is often referred to as an "institution," the institution of marriage is not one of the "free institutions" contemplated in the language of article I, section 1 of the Texas Constitution. Instead, the language "free institutions" is a reference to institutions of state government necessary to ensure the right of local self-government. *See* TEX. CONST. art. I, § 1 interp. commentary (Vernon 1997) ("The provision of Section 1 referring to the right of local self-government . . . seems to be declaratory of the distribution of powers between the two governments, laying

down the proposition that the right of local self-government remains unimpaired to all the states."); *Davenport v. Garcia,* 834 S.W.2d 4, 17 (Tex.1992)(orig.proceeding). Accordingly, appellant's reliance on the "free institutions" clause of the Texas Constitution to challenge the constitutionality of section 6.001 of the Texas Family Code is misplaced. Appellant's assertion that section 6.001 violates article I, section 1 of the Texas Constitution is overruled.

### C. The Open Courts Doctrine

Next, appellant challenges the constitutionality of section 6.008 of the Texas Family Code as a violation of the "open courts" provision of the Texas Constitution. Specifically, appellant argues that by abolishing the defense of recrimination, the legislature arbitrarily and unreasonably interfered with his access to the courts.[4] We disagree.

■ Article I, section 13 of the Texas Constitution states: "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. This provision is directed at prohibiting the legislature from abrogating or unreasonably restricting a litigant's right to seek redress by way of a well-established common law cause of action. *Rose v. Doctors Hospital,* 801 S.W.2d 841, 843 (Tex.1990); *Capellen v. Capellen,* 888 S.W.2d 539, 545 (Tex. App.—El Paso 1994, writ denied). The "open courts" provision, however, does not apply to suits for divorce because they are not common law causes of action, but rather statutorily created and regulated proceedings. *Capellen,* 888 S.W.2d at 545–46

---

4. Section 6.008 provides: "(a) The defenses to a suit for divorce of recrimination and adultery are abolished. (b) Condonation is a defense to a suit for divorce only if the court finds that there is a reasonable expectation of reconciliation." TEX. FAM.CODE ANN. § 6.008 (Vernon 1998).

(holding "[b]ecause suits for divorce ... are not common law causes of action, but are statutorily created and regulated proceedings designed to meet the changing desires and needs of the people in a dynamic society, the 'open courts' provision has no application"); *see Gowin v. Gowin,* 292 S.W. 211, 214 (Tex.1927) (holding that the grounds for divorce are dependent upon the sovereign will, and the state may at any time take away that right entirely or change the conditions of its existence). Accordingly, we overrule appellant's "open courts" challenge to section 6.008 of the Texas Family Code.

### D. Privacy Arguments

Appellant contends that section 6.502(3) of the Texas Family Code violates article I, section 9 of the Texas Constitution while section 6.502(7) violates article I, section 6 of the Texas Constitution. Without deciding the merits of these arguments, we find such arguments not ripe for our review.

The courts of this state are not empowered to give advisory opinions. *Patterson v. Planned Parenthood of Houston and Southeast Texas, Inc.,* 971 S.W.2d 439, 443 (Tex.1998); *Wessely Energy Corp. v. Jennings,* 736 S.W.2d 624, 628 (Tex.1987); *United Servs. Life Ins. Co. v. Delaney,* 396 S.W.2d 855, 859 (Tex.1965). This prohibition extends to cases that are not yet ripe. *Patterson,* 971 S.W.2d at 443; *Camarena v. Texas Employment Comm'n,* 754 S.W.2d 149, 151 (Tex.1988); *Public Util. Comm'n v. Houston Lighting & Power Co.,* 748 S.W.2d 439, 442 (Tex.1987). A case is not ripe when its resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass. *Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849, 852 (Tex.2000); *Patterson,* 971 S.W.2d at 443; *Camarena,* 754 S.W.2d at 151 (holding trial court could not grant relief based on "a hypothetical situation which might or might not arise at a later date. District courts, under our Constitution, do not give advice or decide cases upon speculative, hypothetical or contingent situations."). "By focusing on whether the plaintiff has a concrete injury, the ripeness doctrine allows courts to avoid premature adjudication, and serves the constitutional interests in prohibiting advisory opinions." *Gibson,* 22 S.W.3d at 852.

■ Appellant complains that section 6.502(3) allows a court to order a party to a divorce suit to produce those items protected by article I, section 9, namely that person's "books, papers, documents, and tangible things." Appellant, however, fails to identify for this Court any specific order requiring production of documents protected by article I, section 9. Thus, appellant presents us with no concrete injury. Accordingly, any opinion as to the constitutionality of section 6.502(3) would be contingent upon events that have yet to occur, amounting to nothing more than an advisory opinion.

■ Likewise, appellant's complaint regarding section 6.502(7) of the Texas Family Code is not ripe for judicial determination. Section 6.502(7) allows a court to prohibit the parties, or either party, from spending funds beyond an amount the court determines to be for reasonable and necessary living expenses. Violation of such an order would subject the violator to contempt of court. *See* TEX. FAM.CODE ANN. § 6.506 (Vernon 1998). Appellant argues that "[t]he court might decide that gifts to charitable causes were not 'reasonable and necessary living expenses' and punish the philanthropist for contempt of court." Appellant, however, has failed to identify any order by the trial court in this case declaring his charitable contributions, if any, unreasonable, or holding him in contempt for making charitable contributions. Accordingly, any opinion as to the

constitutionality of section 6.502(7) would be the equivalent of an advisory opinion. We overrule appellant's constitutional challenges to sections 6.502(3) and (7) of the Texas Family Code.

### E. Attorney's Fees

In his last point of error, appellant challenges the trial court's award of attorney's fees to appellee pursuant to its denial of the declaratory judgment action. First, appellant asserts that there is no evidence of attorney's fees because the witness who testified as an expert, Mr. Grimes, was not a competent witness. Second, appellant asserts that the trial court abused its discretion in awarding attorney's fees on appeal from the declaratory judgment, when the trial court did not award attorney's fees for trial on the declaratory judgment.

We lack jurisdiction, however, to consider the merits of appellant's arguments.

■■■■ The trial court awarded attorney's fees pursuant to its denial of the declaratory judgment action. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). However, neither interlocutory orders denying declaratory judgments, nor interlocutory attorneys' fee awards are appealable.[5] *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014 (Vernon Supp.2001). Accordingly, we lack jurisdiction to consider appellant's challenges to the trial court's award of attorney's fees as a result of its denial of appellant's declaratory judgment action.[6]

### IV. Conclusion

Having overruled all of appellant's points of error, we affirm the judgment of

---

5. Section 51.014 provides:

(a) A person may appeal from an interlocutory order of a district court ... that:
(1) appoints a receiver or trustee;
(2) overrules a motion to vacate an order that appoints a receiver or trustee;
(3) certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure;
(4) grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction as provided by Chapter 65;
(5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state;
(6) denies a motion for summary judgment that is based in whole or in part upon a claim against or defense by a member of the electronic or print media, acting in such capacity, or a person whose communication appears in or is published by the electronic or print media, arising under the free speech or free press clause of the First Amendment to the United States Constitution, or Article 1, Section 8, of the Texas Constitution, Chapter 73.
(7) grants or denies the special appearance of a defendant under rule 120a, Texas rules

of Civil Procedure, except in a suit brought under the Family Code; or
(8) grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001.
(b) An interlocutory appeal under Subsection (a) shall have the effect of staying the commencement of a trial in the trial court pending resolution of the appeal.
TEX. CIV. PRAC. & REM.CODE ANN. § 51.014 (Vernon Supp.2001).

6. We are permitted, however, to address appellant's constitutional arguments because they were framed as requests for a temporary injunction, which is immediately appealable. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(4) (Vernon Supp.2001). However, "an appeal of a temporary injunction is not a vehicle which imbues the court with jurisdiction to address interlocutory matters outside the scope of section 51.014 of the Texas Civil Practice and Remedies Code." *Letson v. Barnes,* 979 S.W.2d 414, 417 (Tex. App.—Amarillo 1998, pet. denied). When a litigant challenges both appealable and unappealable interlocutory orders, we "review the portion of an order which is appealable and refuse to consider the portion which is notappealable." *Markel v. World Flight, Inc.,* 938 S.W.2d 74, 78 (Tex.App.—San Antonio 1996, no writ).

the trial court in denying appellant's request for a temporary injunction.

EDELMAN, J., concurs.

FROST, J., concurs and dissents.

RICHARD H. EDELMAN, Justice, concurring.

The provision in question in this case (the "statute") states:

> On the petition of either party to a marriage, the court may grant a divorce without regard to fault if the marriage has become insupportable because of discord or conflict of personalities that destroys *the legitimate ends of the marital relationship* and prevents any reasonable expectation of reconciliation.

TEX. FAM.CODE ANN. § 6.001 (Vernon 1998) (emphasis added). The dissent essentially concludes that because Texas courts have recognized marriage as having a religious component, the term "legitimate ends of the marital relationship" in the statute cannot be construed to exclude that religious aspect. I disagree.

Wherever possible, we are to interpret statutes in a manner to avoid constitutional infirmities. *General Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex.2001). It is undisputed, indeed beyond dispute, that our state and federal constitutions prohibit courts from addressing matters of religious doctrine in any context. Moreover, the extent to which marriage has a religious component is purely a matter within the beliefs of each individual, not a matter of legal interpretation or legislation.

Although courts may observe as a factual matter that some individuals have religious beliefs concerning their marriages, and although courts are bound to protect every individual's rights to have such beliefs, courts certainly could not make, and have not made, any legal decision regarding whether marriage has a religious component because that is neither a legal issue nor a matter that courts may constitutionally decide, contrary to the dissent's numerous references to marriage as "a relationship that Texas case law recognizes as religious in nature," to marriage as being characterized by our state courts as a divine institution ordained by God, to "a wealth of Texas jurisprudence characterizing ... marriage as having a religious component," and the like. Because marriage cannot be, and has not been, held by the courts to have (or not have) a religious component, there was no such case *law* for the Legislature to be aware of in drafting the statute. Accordingly, there is no basis to infer that the Legislature intended the phrase "legitimate ends of the marital relationship" in the statute to include any religious determination by the courts.

Perhaps the non-religious scope of the provision could have been expressed more distinctly or conspicuously if words such as "secular" or "non-religious" had been included. However, rather than changing the meaning of the words actually used, any such terms would only have been redundant since it is manifest that the Legislature and courts have power solely over secular matters in the first place. Although courts will undoubtedly be called upon to interpret what the "legitimate ends of marital relationship" consist of in a secular context, that term is no more inherently or unconstitutionally religious in its scope than the various other terms the law uses, such as "best interest of the child," which, despite potentially strong religious significance to some, can nevertheless be interpreted and applied by the courts without infringing upon the free exercise of religion.

KEM THOMPSON FROST, Justice, concurring and dissenting.

I concur in the court's disposition of both Mr. Waite's challenges to the award

of attorney's fees and all of his challenges to the Texas no-fault divorce statute under the Texas Constitution, except for his challenge under the "rights of conscience" guaranty in Article I, Section 6. For reasons explained below, I agree with Mr. Waite that the no-fault divorce statute violates this provision of our state constitution by impermissibly interfering with Texans' rights of conscience in matters of religion. The court should not reach Mr. Waite's challenges under the United States Constitution because the statute violates the Texas Constitution. *See Davenport v. Garcia,* 834 S.W.2d 4, 11 (Tex. 1992). Because the court rejects Mr. Waite's state constitutional challenge under the "rights of conscience" guaranty of Article I, Section 6, I respectfully dissent.

Under the legal standard the Texas legislature adopted in the no-fault divorce statute, the fact-finder must determine whether the "legitimate ends of the marital relationship" have been destroyed. By requiring this judicial inquiry into the legitimate ends of a relationship that Texas jurisprudence recognizes as religious in nature, the no-fault divorce statute violates the Texas Constitution's strong guaranty of freedom from state control or interference in matters of religious conscience. Although the legislature could have prescribed a different legal standard that would not violate this state constitutional guaranty, this court must apply the statutory language the legislature actually used. Based on longstanding Texas jurisprudence, that language cannot reasonably be interpreted in a way that would render the statute constitutional. Therefore, despite the strong presumption of constitutionality, this court should hold that the Texas no-fault divorce statute violates the "rights of conscience" guaranty of Article I, Section 6 of the Texas Constitution.

## THE TEXAS CONSTITUTION'S PROTECTIONS OF RELIGIOUS FREEDOM

The Texas Constitution contains the following guaranties of religious freedom:

> All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences. No man shall be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent. *No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion,* and no preference shall ever be given by law to any religious society or mode of worship. But it shall be the duty of the Legislature to pass such laws as may be necessary to protect equally every religious denomination in the peaceable enjoyment of its own mode of public worship.

TEX. CONST. art. I, § 6. (emphasis added). Mr. Waite claims the Texas no-fault divorce statute violates the "rights of conscience" guaranty, italicized above.

Our state constitution addresses fundamental principles in broad terms. When considering constitutional challenges asserted under both the Texas and United States Constitutions, this court should first rule on the challenges under the Texas Constitution, whose provisions reflect Texas values, customs, and traditions. *Davenport v. Garcia,* 834 S.W.2d at 11–21. Although Article I, Section 6 is the state counterpart to the Establishment and Free Exercise Clauses of the First Amendment in the sense that the provisions serve the same dual purpose of prohibiting the government from establishing religion and protecting an individual's free exercise of it, the protections afforded are not the same and should not be construed as if they were identical. *See id.* at 20.

The Texas Supreme Court has provided the following guidance for construction of our state constitution:

> The construction of any provision of the Texas Constitution depends upon factors such as the language of the constitutional provision itself, its purpose, the historical context in which it was written, the intention of the framers and ratifiers, the application in prior judicial decisions, the relation of the provision to other parts of the Constitution and the law as a whole, the understanding of other branches of government, the law in other jurisdictions, state and federal, constitutional and legal theory, and fundamental values including justice and social policy.

*Tilton v. Marshall*, 925 S.W.2d 672, 677 (Tex.1996).

It is apparent from a plain reading of Article I, Section 6 that the framers of the Texas Constitution guarded religious liberty zealously, singling out this freedom for special treatment and protection. The bold language itself indicates that the rights and protections created in this section exceed those afforded by the United States Constitution.

In essence, Article I, Section 6:(1) grants all individuals the "right to worship Almighty God according to the dictates of their own consciences"; (2) protects any non-belief in Almighty God or non-adherence to religious views by keeping all individuals free from the compulsion to "attend, erect or support any place of worship or to maintain any ministry against his consent"; (3) restricts "human authority" from controlling or interfering with an individual's "rights of conscience in matters of religion"; (4) proscribes the giving of preferences to "any religious society or mode of worship"; and (5) imposes an affirmative duty on the legislature "to pass such laws as may be necessary to protect equally every religious denomination in the peaceable enjoyment of its own mode of public worship." TEX. CONST. art. I, § 6.

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. CONST. amend. I. This language is purely negative and prohibitive in character. The First Amendment clearly restrains governmental action, but, unlike its Texas counterpart, contains no language which actually bestows religious freedom as an affirmative "right." *See Bullock v. Tex. Monthly*, 731 S.W.2d 160, 166–67 n. 1 (Tex.App.— Austin 1987, writ ref'd n.r.e.) (Carroll, J., dissenting) (stating that the Texas Bill of Rights, in comparison to the federal Bill of Rights, is written as an affirmative grant of powers). In contrast, Article I, Section 6 actually grants all individuals the affirmative "right to worship Almighty God according to the dictates of their own consciences." Moreover, the state provision uses stronger words than the First Amendment to convey the breadth of the restriction on control and interference with religious liberty. In emphatic language, the Texas Constitution condemns "*in any case whatever*" control or interference "with the rights of conscience in matters of religion." TEX. CONST. art. I, § 6 (emphasis added). This spirited language shows that the people intended to claim the fullest measure of restraint over government control or interference in an individual's "rights of conscience in matters of religion." [1] The disparity in the wording of

---

**1.** Although the framers of the Texas Constitution used the word "ought" in the "rights of conscience" clause and "shall" in the preceding sentence, the word "ought" still is mandatory rather than directory. *Jackson v. State*, 32 Tex.Crim. 192, 22 S.W. 831, 839 (App. 1893) ("ought" is mandatory); *Hunt v. State*, 22 Tex.App. 396, 3 S.W. 233 (App.1886, no

the United States and Texas Constitutions indicates that government actions that might not constitute an outright prohibition on religious activities in violation of the First Amendment could nonetheless "interfere with the rights of conscience in matters of religion." TEX. CONST. art. I, § 6. The intention of the framers and ratifiers of the Texas Constitution, as evident in the plain meaning of the words they used, compels the conclusion that Article I, Section 6 provides broader protection of religious freedom than the First Amendment. *See Howell v. State*, 723 S.W.2d 755, 758 (Tex.App.—Texarkana 1986, no writ); *see also Davenport*, 834 S.W.2d at 10 (holding that the Texas Constitution provides greater protections for free expression than the United States Constitution).

At the heart of this case is the complex relationship between religion and marriage and how that unique relationship is impacted by the Texas no-fault divorce statute. Any understanding of these intricate concepts and their contours on the constitutional landscape must begin with an understanding of the state's view of marriage as an institution and the government's role in the dissolution of the marital relationship.

### MARRIAGE AS AN INSTITUTION AND THE STATE'S ROLE IN THE DISSOLUTION OF MARRIAGE

Texas courts long ago recognized that the law views marriage as more than a contract; it is a status. *See Grigsby v. Reib*, 105 Tex. 597, 153 S.W. 1124, 1130 (1913). From a legal standpoint, when a man and a woman enter into a marriage relationship, they enter into a new state, the rights, duties, and obligations of which are defined by law. Thus, the power of the parties as to the duration of their relationship is at an end because their legal rights under it are governed by the will of the lawmakers. *Id.* at 1126. Those lawmakers regulate the institution of marriage by public authority, upon principles of public policy, for the benefit of society. *Id.*

The state has a legitimate interest in the creation and the dissolution of the marriage contract. *See Sosna v. Iowa*, 419 U.S. 393, 404, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Since the early days of the republic, Texas courts have recognized that marriage is "an important element in the moral order, security and tranquility of civilized society." *Sheffield v. Sheffield*, 3 Tex. 79, 86 (1848). Because marriage is the core of the family, our society has long embraced it as an institution deserving of the greatest possible support and protection. For centuries, the law has looked upon marriage with special favor, seeking in all lawful ways to uphold this most cherished of all societal relationships. According to our jurisprudence, the institution of marriage is afforded this special protection because breakdowns in marital relationships lead to profound and lasting negative effects on our society and our culture. Texas courts have long recognized that the cost of marital failure is paid not only by the couple whose marriage is shattered and by any children of their union, but also by society as a whole. *See, e.g., Grant v. Grant*, 286 S.W. 647, 650 (Tex. Civ.App.—Fort Worth 1926, no writ) ("Marriage being a public institution of

writ) (Texas constitutional provisions are always mandatory); *McKay v. State*, 32 Md. App. 451, 362 A.2d 666, 674 & n. 13 (Md.App. 1976) ("ought" as used in state constitution is mandatory), *aff'd*, 280 Md. 558, 375 A.2d 228 (Md.1977); *Torcaso v. Watkins*, 223 Md. 49,

162 A.2d 438, 441–42 (Md.1960) ("ought" as used in state constitution provision regarding religion is mandatory), *rev'd on other grounds*, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961).

universal concern, and each individual marriage or its dissolution affecting the rights, not only of the husband and wife, but of all other persons, the court sitting in a divorce case should regard the public as a party thereto ....") (quoting 3 *Bishop on Marriage and Divorce*, § 480).

Recognizing that marriage is essential to the preservation of the home and the moral foundation of our society, Texas jurisprudence built a virtual fortress around the marriage institution. *See, e.g., Grigsby,* 153 S.W. at 1126 ("The parties have pledged themselves, not only for their own happiness, but for purposes important to society, to live together during the term of their natural lives. This engagement is the most solemn and important of human transactions. It is regarded by all Christian nations as the basis of civilized society, of sound morals, and of the domestic affections; and the relations, duties, obligations and consequences flowing from the contract are so important to the peace and welfare of society as to have placed it under the control of special municipal regulations, independent of the will of the parties."). For generations, Texas courts vigorously safeguarded the institution of marriage for the good of society. *See, e.g., Bippus v. Bippus,* 246 S.W.2d 502, 505 (Tex.Civ.App.—San Antonio 1952, no writ) ("The permanency of marriage and the maintaining of the home is the very basis of our government and our civilization, and the courts do not lightly cast asunder these important and sacred relations."); *Pappas v. Pappas,* 146 S.W.2d 1115, 1116 (Tex.Civ.App.—Fort Worth 1941, no writ) ("[T]he State and society have an interest in keeping intact all [marriage] contracts and in protecting them to the fullest extent. This is true because such contracts form the basis of a decent social order, the solid foundation of the homes of the people and are necessary to produce and protect a civilization that nurtures the spiritual side of mankind."); *Dickinson v. Dickinson,* 138 S.W. 205, 209 (Tex.Civ.App.—San Antonio 1911, no writ) ("[I]t should be the aim and desire of every court to give the law that liberal interpretation that will tend to build a fortress about the marriage institution."); *Dority v. Dority,* 30 Tex.Civ. App. 216, 70 S.W. 338, 342 (1902) ("[T]he good order and happiness of society depends upon the sacredness and inviolability, except for just and adequate cause, of the marriage contract ...."), *aff'd,* 96 Tex. 215, 71 S.W. 950 (1903).

More than a century ago, the United States Supreme Court recognized that the very essence of marriage is indissolubility by the will of the parties. *Maynard v. Hill,* 125 U.S. 190, 205, 8 S.Ct. 723, 31 L.Ed. 654 (1888). This used to mean that two individuals who had taken vows to live together for life as husband and wife were expected to keep their vows except for reasons based on matrimonial wrongs, i.e., cruelty, adultery, abandonment, and other "fault-based" grounds. *See, e.g.,* TEX.REV. CIV. STAT. ANN. art. 4629, *repealed by* Acts 1969, 61st Leg., p. 2707, ch. 888, § 1. So protected was the institution of marriage that the dissolution of marriage through divorce could be founded *only* upon a matrimonial wrong or upon living apart for a long period of time.[2] That all changed in 1969, when the Texas legislature enacted

---

2. In 1913, the Texas legislature enacted subdivision 4 of article 4629 of the Civil Statutes, which provided for a no-fault divorce where the spouses had lived apart without cohabitation for at least ten years. *See Robertson v. Robertson,* 217 S.W.2d 132, 134–35 (Tex.Civ. App.—Fort Worth 1949, no writ). In 1953, the legislature reduced the time period in this statute to seven years, and in 1967, the legislature again reduced the time period to three years. *See* Acts 1953, 53rd Leg., p. 366, ch. 91, § 1; Acts 1967, 60th Leg., p. 699, ch. 288, § 1.

the no-fault divorce statute. This statute essentially provides that upon the petition of either spouse, a divorce may be granted without regard to the fault of either party based solely on the insupportablility of the marriage. *See* TEX. FAM.CODE ANN. § 6.001 (Vernon 1998). With the enactment of the no-fault divorce statute, marriage, traditionally viewed as a lifelong commitment, could be dissolved upon a showing that it had become "insupportable."

Mr. Waite contends that the no-fault divorce statute has failed to fulfill the purposes for which it was enacted.[3] He argues that since its enactment, the Texas no-fault divorce statute has been widely criticized as creating "divorce on demand" which, in turn, has led to a long list of societal woes. He points to numerous studies that conclude the no-fault divorce has created terrible, lifelong hardships for children, led to intolerable social costs, and utterly failed to deliver on its promise of greater adult happiness. To support his arguments, Mr. Waite cites to statistics and scholarly assessments that conclude the no-fault divorce has contributed significantly to the steady displacement of our culture of marriage and two-parent households and paved the way for a new culture of divorce and broken families.

Neither Mr. Waite's assault on the no-fault divorce nor the terrible mischief he claims it has wreaked in our society provides any grounds for judicial relief. It is not the function of the judiciary to pass upon the wisdom or folly of legislative action or to substitute its policy preferences for the considered decisions of the legislature. "When the lawmaking power has determined the policy with respect to

and has specified the ground upon which divorce is authorized, it remains but for the judiciary to enforce the legislative will." *Finn v. Finn,* 185 S.W.2d 579, 581 (Tex.Civ.App.—Dallas 1945, no writ). A court of law cannot invade the legislature's realm or undo its work absent a constitutional infirmity. *See Shepherd v. San Jacinto Junior Coll. Dist.,* 363 S.W.2d 742, 743 (Tex.1962). Inasmuch as it is within the province of the Texas legislature to regulate the dissolution of marriage, this court must bow to the express will of the people's representatives in matters of social policy, and consider *only* the constitutionality of the no-fault divorce statute. *See Wood v. Wood,* 159 Tex. 350, 320 S.W.2d 807, 810 (1959).

## DEFINING THE CONSTITUTIONAL DEFECT IN THE TEXAS NO FAULT DIVORCE STATUTE

The constitutional defect, if any, in the no-fault divorce statute is not that the legislature lacks the power or authority to enact a law that grants divorce without regard to the fault of either party. It clearly does. But, under our state constitution, it may not do so in a manner that controls or interferes in one's rights of conscience in matters of religion. Thus, the issue this court must address is: *Does the Texas no-fault divorce statute, either explicitly or implicitly, entail a religious determination or inquiry?*

Mr. Waite contends, among other things, that the no-fault divorce statute compels Texas courts to decide issues of religious conscience—issues over which no civil court can exercise jurisdiction under

---

**3.** *See Baxla v. Baxla,* 522 S.W.2d 736, 738 (Tex.Civ.App.—Dallas 1975, no writ) ("[I]n seeking to create a legal system which meets the realities of marital failure, legislators believed that removing considerations of fault and eliminating the incentive to present fault

evidence would materially reduce the bitterness and acrimony which had attended divorce proceedings."), *disapproved on other grounds, Eggemeyer v. Eggemeyer,* 554 S.W.2d 137 (Tex.1977).

our State constitution. To support this contention, he relies on Texas jurisprudence that views marriage as a divine and sacred institution and argues the Texas no-fault divorce statute requires a judicial inquiry into the "legitimate ends" of that inherently religious institution. If the no-fault divorce statute does not require the court to make any such religious inquiry, evaluation, or determination, then it does not offend our state constitution's notions of religious freedom, and Mr. Waite's challenge under Article I, Section 6 fails.

Any determination as to whether the Texas no-fault divorce provision requires our civil courts to entangle themselves in a religious question must begin with the plain language of the statute:

> On the petition of either party to a marriage, the court may grant a divorce without regard to fault if the marriage has become insupportable because of discord or conflict of personalities that destroys the legitimate ends of the marital relationship and prevents any reasonable expectation of reconciliation.

TEX. FAM.CODE ANN. § 6.001 (Vernon 1998).

The trial court must interpret and enforce statutes as they are written by the legislature. *Sorokolit v. Rhodes,* 889 S.W.2d 239, 242 (Tex.1994). The Texas no-fault divorce statute requires the factfinder to decide whether the marriage has become insupportable because of discord or conflict of personalities. Significantly, the existence of discord or conflict, alone, is not enough to establish insupportability. The discord or conflict must be so great that it (1) destroys the legitimate ends of the marital relationship and (2) prevents any reasonable expectation of reconciliation. TEX. FAM.CODE ANN. § 6.001; *In re Marriage of Richards,* 991 S.W.2d 32, 37 (Tex.App.—Amarillo 1999, writ dism'd). Thus, a court ruling on a petition for di-

vorce under the Texas no-fault provision necessarily must address whether the legitimate purposes of the marriage have been destroyed and whether the extent of discord or conflict forecloses any reasonable expectation that the couple will reconcile. *See Cusack v. Cusack,* 491 S.W.2d 714, 719–20 (Tex.Civ.App.—Corpus Christi 1973, writ dism'd). Judicial inquiry into the existence of discord or conflict of personalities in the marriage and the reasonable expectation of the couple's reconciliation entails no religious determination. However, Mr. Waite contends that identifying "the legitimate ends of the marital relationship" requires the court to make inquiries and determinations that interfere with his rights of conscience in matters of his Christian faith and that his religious convictions about marriage are necessarily entangled in any inquiry or determination as to whether the legitimate ends of his marital relationship have been destroyed. Thus, he argues, the Texas no-fault divorce statute is unconstitutional under the "rights of conscience" guaranty of Article I, Section 6.

### PRESUMPTIONS IN CONSTRUING AND INTERPRETING THE TEXAS NO FAULT DIVORCE STATUTE

Mr. Waite, as the party challenging the no-fault divorce statute, bears the burden of showing the statute's unconstitutionality. *See Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.,* 826 S.W.2d 489, 493 (Tex.1992). There is a strong presumption that the challenged statute is constitutional and an equally strong presumption that the state legislature did not intend to enact an unconstitutional law. *Vinson v. Burgess,* 773 S.W.2d 263, 266 (Tex.1989). Moreover, it is the duty of this court to construe every statute in a manner that renders it constitutional if it is possible to do so consistent

with a reasonable interpretation of its language. *Lawrence v. State*, 41 S.W.3d 349, 356 (Tex.App.—Houston [14th Dist.] 2001, pet. filed) (en banc).

### THE TENSION BETWEEN THE NO FAULT DIVORCE STATUTE AND THE "RIGHTS OF CONSCIENCE" GUARANTY OF THE TEXAS CONSTITUTION

The people of the State of Texas, who humbly invoked Almighty God's blessings in establishing our constitution,[4] recognized the intrinsic value of religion, removed from any particular religious doctrine or denomination. The framers' focused attention on this subject, the intensity of the words they used in Article I, Section 6, and their references to Almighty God there and elsewhere in the constitution,[5] strongly suggest that our forefathers envisioned Texas as a place where religion could and would flourish, but not through compulsion and not by showing sectarian preferences. Because the people of Texas viewed religious beliefs as worthy of the utmost protection, they wanted to ensure that Texans would not suffer government control or interference in the spiritual aspects of their lives. Recognizing that religious people want to practice their faith and that sacred beliefs and duties should not be subordinated to the commands of secular government, the framers of the Texas Constitution included the "rights of conscience" guaranty to preclude the government from evaluating the legitimacy, validity, or value of the religious doctrines and beliefs held by its citizenry. This would necessarily preclude the government from allowing its courts to inquire into or evaluate Texans' "rights of conscience in matters of religion."

The framers of Article I, Section 6 sought to ensure that Texans would stand free of inquiry from the government as to teachings of faith and personal convictions about spiritual matters. Thus, any assessment of Mr. Waite's state constitutional challenge to the Texas no-fault divorce statute requires an examination of the specific nature of the trial court's task in determining the effect of "discord or conflict in personalities" on the viability of "the legitimate ends of the marital relationship."

To illustrate the nature of the problem, consider a hypothetical statute which provides a monthly tax exemption for individuals sponsoring public holiday celebrations. This hypothetical statute provides that to qualify for the December exemption, the holiday celebration must further "the legitimate ends of Christmas." Ignoring the other constitutional infirmities in this hypothetical statute and focusing *only* on the determination the government would be required to make, we can more plainly see the dilemma that befalls a court that must, because of the statute's wording, stray from the secular into the religious realm. Some in our society view Christmas as a deeply religious celebration whose "legitimate ends" are wholly faith-based. Others associate Christmas with Santa Claus, reindeer, and other purely secular inventions, attaching no religious significance to the holiday at all. A court asked to rule on the matter would necessarily have to evaluate and determine whether the applicant's celebration did or did not further the "legitimate ends" of a holiday viewed as both secular and reli-

---

4. *See* Preamble to Texas Constitution, which reads: "Humbly invoking the blessings of Almighty God, the people of the state of Texas do ordain and establish this Constitution."

5. *Id.*

gious. The fact that Christmas, as an institution, has a role in the secular world would not alter the fact that the government was being asked to weigh and determine matters of religious conviction and give preference to one view over another.

For many in our society, marriage, like Christmas, is an institution that abides in two worlds—the secular and the religious. While our lawmakers clearly have the power to regulate marriage and its dissolution in the secular context, no instrument of government can make inquiries into the religious or spiritual aspects of a marriage. "A court of law is not a place in which to ascertain and declare religious orthodoxy, and derive from it the rights and welfare of people in the ordinary relations of life." *Kendall v. Williams*, 233 S.W. 296, 298 (Tex.Civ.App.—Dallas 1921, no writ). Under our state constitution, a court of law ruling on a divorce cannot even consider religious preferences, much less favor one religion over another. *See, e.g., Haymond v. Haymond*, 74 Tex. 414, 12 S.W. 90 (1889); *see also Frantzen v. Frantzen*, 349 S.W.2d 765, 768 (Tex.Civ.App.—San Antonio 1961, no writ) ("[O]ne's religious beliefs, teachings and practices are not grounds for depriving a parent of his or [her] children, so long as such teachings and practices are neither immoral nor illegal."). A court may not take sides in any religious disputes nor inquire into the religious opinions of the litigants. If marriage is viewed as a religious institution under the Texas no-fault divorce statute, any determination of whether the "legitimate ends of the marital relationship" have been "destroyed" by discord or conflict in personalities would necessarily entail such an impermissible inquiry.

The Texas legislature did not define the "legitimate ends of the marital relationship" in the no-fault divorce statute. Mr. Waite suggests that this lack of definition leaves the parties to the no-fault divorce at their peril to find out what, in the opinion of the trial judge, is encompassed by those words, and whether, according to the judge's measure of faith, the "legitimate ends" of the marriage have been destroyed by whatever discord or conflict of personalities exists in the relationship. "No man has the right to set himself up as a judge in matters of religious opinion, nor dictate to others in questions of belief and faith." *Burchill v. Hermsmeyer*, 262 S.W. 511, 514 (Tex.Civ.App.—San Antonio 1924, no writ).

Under the Texas Constitution, no inhabitant of this state can be made to explain or justify his religious convictions in a court of law. Yet, under the Texas no-fault divorce statute, the court must ask, and litigants must answer, inquiries that, by their very nature, go to the heart of religious beliefs. Mr. Waite, for example, views marriage as a three-way relationship, with the husband and wife making a covenant to each other as well as to God. Under the teachings of Mr. Waite's religious faith, a legitimate end of the marital relationship is for husband and wife to fulfill their covenant to God. In determining if the "legitimate ends" of Mr. Waite's marital relationship have been destroyed, the trial court would have to pass judgment on the legitimacy of Mr. Waite's religious convictions and make a determination as to whether these ends have been destroyed. The government, in its sovereign power, may dissolve Mr. Waite's marriage, but it may not, in the process, compel him to defend his faith, nor may the government sit in judgment of it.

It is hardly debatable that the legislature is prohibited from enacting a statute that allows, much less commands, a court to determine whether, in a religious context, the legitimate ends of a marriage have been destroyed. Thus, the critical inquiry is whether the statute can be read

in a purely secular context, as my distinguished colleagues conclude. If it cannot, the institution of marriage, being religious as well as secular in nature, has "legitimate ends" that are not subject to evaluation or inquiry by courts of law, and therefore the statute would violate the "rights of conscience" guaranty of the Texas Constitution.

In making this critical determination, we must presume the legislature intended every word and phrase of the no-fault divorce statute to have meaning and effect. *Tex. Workers' Comp. Ins. Fund v. Del. Indus., Inc.*, 35 S.W.3d 591, 593 (Tex.2000). What, then, did the legislature mean when it conditioned the granting of a no-fault divorce on a finding that "the marriage has become insupportable because of discord or conflict of personalities that destroys the legitimate ends of the marital relationship"? The legislature could have provided for a no-fault divorce upon a finding of *any* discord or conflict of personalities in the marriage. It did not. Instead, it added language to ensure that the level of marital discord or conflict of personalities was so substantial that it threatened the viability of the marriage by destroying its legitimate purposes. Because the legislature did not define those purposes, the meaning of "legitimate ends of the marital relationship" is left to the courts to determine. This court, however, does not define this term either. Instead, my distinguished colleagues essentially conclude that whatever the legitimate ends of the marital relationship are, they do not include religious convictions or any religious component. More than a century of Texas jurisprudence suggests otherwise.

For generations, our state courts have characterized marriage as a "divine institution"[6] with "sacred status" and "sacred rights," an institution and status "ordained by God," and "not originated by human law." *Grigsby*, 153 S.W. at 1129–30. In the seminal case of *Grigsby v. Reib*, the Texas Supreme Court, citing numerous authorities, including United States Supreme Court Justice Joseph Story, declared:

> *Marriage was not originated by human law* .... All of the duties and obligations that have existed at any time between husband and wife existed between those husbands and wives before civil government was formed.... It would be *sacrilegious* to apply the designation, "a civil contract" to .... marriage. It is that and more; *a status ordained by God,* the foundation and support of good government, and absolutely necessary to the purity and preservation of good society.

*Id.* (emphasis added). Texas precedent also indicates that the "principal ends" of marriage are procreation according to God's plan and the lawful indulgence of passions. *Id.; Gowin v. Gowin*, 292 S.W. 211, 214 (Tex. Comm'n. App.1927, judgm't adopted). Viewed in light of this precedent, any inquiry as to whether the discord or conflict of personalities within a particular marriage has destroyed the legitimate ends of the marital relationship would seem to fall squarely within an individual's "rights of conscience in matters of religion" and outside the realm of any secular court.

Mrs. Waite ridicules these "ancient cases" as "the musings of dead judges." Rich in character and wisdom, these "ancient cases" have endured in our state's jurisprudence for generations and cannot be so flippantly dismissed. Although some of the words of the revered jurists serving on our state's highest courts may be *obiter dictum*, they are nonetheless part of Texas jurisprudence. Research reveals no cases

---

6. *Evans v. Ball,* 6 S.W.2d 180, 181 (Tex.Civ. App.—San Antonio 1928, writ dism'd).

that have challenged their longstanding characterization of marriage as a divine and sacred institution. In fact, recent cases have made the same observation. *See, e.g., Saltarelli v. Saltarelli,* 670 S.W.2d 785, 786 (Tex.App.—Fort Worth 1984, no writ) ("We must agree that marriage is a sacred institution. . . ."); *Trickey v. Trickey,* 642 S.W.2d 47, 49 (Tex.App.—Fort Worth 1982, writ dism'd) (recognizing the existence of "many cases containing language to the effect that the institution of marriage is of divine origin"). As an intermediate, precedent-following court considering an issue of first impression, we must take our guidance where we find it. These cases cannot be ignored.

The people of the State of Texas, who declared that no human authority ought, *in any case whatever,* "to control or interfere with the rights of conscience in matters of religion," clearly established their intendment against state inquiry into the religious opinions and beliefs of individuals. The Texas no-fault divorce statute compels the government to evaluate the "legitimate ends" of the parties' marital relationship and to determine if those ends have been destroyed. A spouse who chooses to defend the marriage and contest the petition for no-fault divorce is thrust into the unthinkable position of having to persuade a government representative (the trial judge) as to the viability of the "legitimate ends" of an institution the law recognizes as religious in nature, i.e., that despite marital discord or conflict in personalities, the "legitimate ends of the marital relationship" have not been destroyed. Evaluation of this statutory issue invites the court to make inquiries into the exercises, disciplines, practices, and doctrines impacting the parties' rights of conscience in matters of religion. Indeed, the trial court below observed on the record that "*the religious aspects of marriage are significant, if not the most significant aspects of marriage.*" The trial court indicated that although it was unsure how "the sacred nature" of marriage impacted the legal issues, its doubts did not justify preclusion of expert testimony on the religious component of marriage. The opinions and religious beliefs of individuals are neither the object of civil government nor under its jurisdiction. The "rights of conscience" guaranty means nothing if civil courts may inquire about, and evaluate, matters of religious faith.

Unquestionably, for some in our society, the statutory inquiry into the "legitimate ends of the marital relationship" contains no religious component. That fact, however, does not justify the invasion of conscience for those whose view of the marital relationship and its legitimate ends is in accordance with longstanding Texas jurisprudence on the subject. For many Texans, like Mr. Waite, it is not even possible to identify the legitimate ends of the marital relationship without regard to religious beliefs. The religious aspects of the legitimate ends of the marriage institution are so inextricably intertwined with the nonreligious aspects that it is impossible to view them separately.

The marital relationship is a complex one whose legitimate ends are multifaceted. If, in drafting the no-fault divorce statute, the Texas legislature intended to limit the statutory inquiry about the "legitimate ends of the marital relationship" to *some,* but not all, facets of the marital relationship, the words it chose do not achieve that end.

In resolving a constitutional challenge, a court is to presume that statutes are constitutional and, if possible, construe them to avoid any unconstitutional effect. *See Brady v. Fourteenth Court of Appeals,* 795 S.W.2d 712, 715 (Tex.1990); TEX. GOV'T CODE ANN. § 311.021(1). My respected col-

leagues suggest that by reading the term "legitimate ends of the marital relationship" only through secular lenses, leaving all considerations of the religious and spiritual aspects of a marriage aside, the statute does not trample on the constitutional protections afforded by Article I, Section 6. However, in assessing whether a statute interferes with "rights of conscience in matters of religion," it is not enough to simply proclaim that, because the words of a statute are not "religious," the statute does not infringe on "rights of conscience in matters of religion." Rather, the court should ascertain whether the subject of the statute has an inherent or recognized religious component, and where, as here, the statute expressly calls for a judicial inquiry into the legitimate purposes of a recognized or inherently religious institution, the court cannot, by statutory interpretation, ignore the Article I, Section 6 implications.

In determining the constitutionality of a statute, this court must presume that the legislature, in enacting the law, knew all prior decisions of the courts pertaining to the subject matter. *Wichita County v. Hart,* 917 S.W.2d 779, 782 (Tex.1996).

Thus, we must presume that the legislature was aware of the Texas case law which defines the "principal ends" of marriage by reference to "Divine Providence." *See Gowin,* 292 S.W. at 214. We must also presume that the legislature was cognizant of the enormous body of Texas jurisprudence that characterizes marriage as a having a religious component.[7] Although the plurality opinion relies heavily on the presumption of constitutionality, it does not even address the presumption that the legislature drafted the no-fault divorce statute with an awareness of this Texas jurisprudence. Because Texas courts consistently characterized the marital relationship as "holy," "divine," "sacred" and "ordained by God" long before the legislature enacted the no-fault divorce statute, it is reasonable, and logical, to infer that the legislature's reference to "legitimate ends of the marital relationship" bore some signification to this judicial characterization. It is not reasonable or logical to conclude that our lawmakers ignored it or that they were ignorant of it.

Additionally, we are to presume that the legislature was aware of the constitutional

---

7. *See, e.g., Grigsby v. Reib,* 105 Tex. 597, 153 S.W. 1124 (1913) (stating marriage is a "status ordained by God"); *Saltarelli v. Saltarelli,* 670 S.W.2d 785, 786 (Tex.App.—Fort Worth 1984, no writ) ("We must agree that marriage is a sacred institution...."); *Trickey v. Trickey,* 642 S.W.2d 47, 49 (Tex.App.—Fort Worth 1982, writ dism'd) (recognizing the existence of "many cases containing language to the effect that the institution of marriage is of divine origin"); *Hodges v. Pemberton,* 442 S.W.2d 420, 424 (Tex.Civ.App.—Fort Worth 1969, no writ) (referring to marriage as "holy status of lawful wedlock"); *McGinnes v. McGinnes,* 322 S.W.2d 417, 418 (Tex.Civ. App.—Austin 1959, no writ) (stating that "the marriage tie is a sacred contract"); *Dickey v. Dickey,* 290 S.W.2d 933, 935 (Tex.Civ.App.— Texarkana 1956, no writ) ("Marriage is a sacred institution among us, ordained of God...."); *Tijerina v. Botello,* 207 S.W.2d 136, 138 (Tex.Civ.App.—Austin 1947, no writ) (referring to marriage as a "holy institution"); *Finn v. Finn,* 185 S.W.2d 579, 582 (Tex.Civ. App.—Dallas 1945, no writ) (referring to the institution of marriage as "a sacred status of man and woman recognized by all Christian countries to be of divine origin"); *Evans v. Ball,* 6 S.W.2d 180, 181 (Tex.Civ.App.-San Antonio 1928, writ dism'd) ("Marriage is a divine institution, as well as a legal obligation, fostered by the Great Jehovah's command, that those who are joined together as man and wife 'let no man put asunder'...."); *Cole v. Cole,* 299 S.W. 924, 926 (Tex.Civ.App.—San Antonio 1927, no writ) (describing marriage as "a relation ordained by the laws of God and sanctioned and solemnized ... by the laws of man"); *Tanton v. Tanton,* 209 S.W. 429, 430 (Tex.Civ.App.—El Paso 1919, writ dism'd w.o.j.) ("The marriage relation is a sacred matter.").

prohibition against courts inquiring into an individual's religious beliefs and that it would not enact a statute that violated this rule. *See Wichita County*, 917 S.W.2d at 782. This is a very strong presumption, but it is not without limits. Those limits are defined by the reasonableness of the interpretation that must attach if the statute is to be held constitutional. It is the duty of this court to construe the statute in a manner that renders it constitutional *only* "if it is possible to do so consistent with a reasonable interpretation of its language." *Lawrence*, 41 S.W.3d at 356 (Tex. App.—Houston [14th Dist.] 2001, pet. filed) (en banc); *Trinity River Auth. v. URS Consultants, Inc.-Tex.*, 869 S.W.2d 367, 370 (Tex.App.—Dallas 1993), *aff'd*, 889 S.W.2d 259 (Tex.1994). Given the plain language of the statute, the ordinary usage of the operative terms, and a wealth of Texas jurisprudence characterizing and acknowledging marriage as having a religious component, it is not reasonable to interpret "legitimate ends of the marital relationship" to include *only* the non-religious aspects of the marriage. Indeed, against the backdrop of more than a century of Texas cases characterizing the marriage institution as "holy," "sacred," "divine" and "ordained by God," there is no reasoned basis for concluding that the "legitimate ends of the marital relationship" do not include religious convictions. For those who have faith-based marriages, it is not even practicable to carve out for separate examination and analysis the non-religious aspects of this institution that Texas courts have historically viewed as inherently religious. Nor is it logical or reasonable to conclude that a secular judge could define what is and is not included in the "legitimate ends of the marital relationship" without controlling or interfering in another's rights of conscience in matters of religion.

Moreover, it is no answer to say that Mr. Waite, notwithstanding the grant of a no-fault divorce, may continue to exercise his rights of conscience, believing that in the eyes of God, he and Mrs. Waite are married in accordance with their wedding vows. The no-fault divorce statute violates Article I, Section 6 because, as written, it requires a court to undertake an unconstitutional inquiry before it may grant a divorce, not because the statute allows no-fault divorces.

Any act by the legislature that calls for a civil court to inquire into an individual's religious beliefs and convictions is a clear departure from government neutrality in spiritual matters. The Texas legislature may specify on what grounds, if any, divorces are to be granted. However, it cannot enact laws that invite or, as here, compel civil courts to make inquiries and determinations about the "legitimate ends" of an institution this state's courts have recognized as "holy," "divine," "sacred," and "ordained by God." By requiring such an inquiry, the Texas no-fault divorce statute encroaches on "rights of conscience in matters of religion" guaranteed by Article I, Section 6 of the Texas Constitution.

## DETERMINING THE APPROPRIATE STANDARD FOR EVALUATING THE CONSTITUTIONALITY OF THE NO FAULT DIVORCE STATUTE

Mrs. Waite argues that the Texas no-fault divorce statute is a neutral law of general application and, as such, it does not single out Mr. Waite for adverse treatment based upon his religious convictions. She urges this court to adopt the rule the United States Supreme Court announced in *Employment Division v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990): Neutral laws of general application do not violate the First Amendment merely because they infringe on the particular religious convictions of individual citizens.

*See, e.g., id.* (rejecting religious objections to criminalization of peyote); *United States v. Lee,* 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982) (rejecting religious objections to social security); *Gillette v. United States,* 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971) (rejecting religious objections to the draft); *Braunfeld v. Brown,* 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961) (rejecting religious objections to Sunday-closing laws); *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (rejecting religious objections to child labor laws); *Reynolds v. United States,* 98 U.S. 145, 25 L.Ed. 244 (1878) (rejecting religious objections to criminalization of polygamy). Under this rule, an individual's religious beliefs do not excuse him from the effects of an otherwise valid and neutral law. *Employment Div.,* 494 U.S. at 878–79, 110 S.Ct. 1595.

In *Employment Division v. Smith,* the defendants challenged the constitutionality of a state law criminalizing the use of peyote on the ground that peyote use was central to their religion. *Id.* at 874–76., 110 S.Ct. 1595 Upholding the statute, the United States Supreme Court found that it was a neutral law and did not unconstitutionally infringe on the defendants' religious liberty. *Id.* at 876–82, 110 S.Ct. 1595. The Court rejected application of the "strict scrutiny" test in connection with a First Amendment challenge to a neutral law of general application. Justice O'Connor urged the Court to apply strict scrutiny to the free exercise claim, precisely as Mr. Waite urges in this case. *See id.* at 891–907, 110 S.Ct. 1595 (O'Connor, J., concurring). Justice Scalia, writing for the Court, rejected that suggestion in favor of a bright-line rule that neutral laws are immune from free exercise challenges. *Id.* at 885, 110 S.Ct. 1595 ("We conclude today that the sounder approach, and the approach in accord with the vast majority of

our precedents, is to hold the test inapplicable to such challenges.").

Mrs. Waite contends that, although the no-fault divorce statute incidentally burdens Mr. Waite's personal religious beliefs, it does not offend our state constitution. Relying on *Employment Division,* 494 U.S. at 876–82, 110 S.Ct. 1595, she argues that if that were not the rule, individual citizens would retain the privilege of deciding which laws they choose to obey, and each would be "a law unto himself." *See Reynolds v. United States,* 98 U.S. at 145, 166–67 (1878) ("Can a man excuse his practices to the contrary [of law] because of his religious belief? To permit this would be to make the professional doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself.") No Texas court appears to have applied this rationale in addressing challenges under Article I, Section 6 of the Texas Constitution, although several have reached similar conclusions. *See, e.g., State v. Corpus Christi People's Baptist Church, Inc.,* 683 S.W.2d 692 (Tex.1984) (rejecting religious objections to licensing procedures for child care facilities); *City of New Braunfels v. Waldschmidt,* 109 Tex. 302, 207 S.W. 303 (1918) (rejecting constitutional objections to requiring vaccinations for school children); *Gabel v. Houston,* 29 Tex. 335 (1867) (rejecting religious objections to Sunday-closing law); *Howell v. State,* 723 S.W.2d 755 (Tex.App.—Texarkana 1986, no writ) (rejecting religious objections to compulsory public education).

The reasoning in *Employment Division v. Smith,* however, does not address the dilemma of the Texas no-fault divorce statute. Unlike the statute criminalizing use of peyote, the Texas no-fault divorce provision requires an inquiry by the state into matters of religious conscience. The statute in *Employment Division v. Smith* was

neutral on its face. It prohibited use of peyote; *it did not compel the court to determine whether peyote use was a "legitimate end" of the religious activities of the defendants.* In contrast, the Texas no-fault divorce statute does not merely ask the court to determine if there is discord or conflict of personalities; it goes further, requiring the court to determine the legitimate ends of the marital relationship and then to determine whether discord or conflict destroys those ends. The Texas no-fault divorce statute goes beyond a neutral law of general application, and thus is not analogous to the statute in *Employment Division v. Smith.* The reasoning of *Employment Division v. Smith* might well apply in cases that have statutes with the same characteristics, but it is not appropriate in cases such as this, where the statute, on its face, calls for court inquiry into protected matters. In any event, this court is not required to apply principles from the Free Exercise Clause of the First Amendment in construing the "rights of conscience" clause of the Texas Constitution. That is not to say, however, that application of that test would not be appropriate in a case with an analogous statute.

Relying on *Howell v. State,* 723 S.W.2d 755 (Tex.App.—Texarkana 1986, no writ), for the proposition that Mrs. Waite must prove the no-fault divorce statute is the "least restrictive alternative" to accomplish a "compelling state interest," Mr. Waite urges this court to analyze his "rights of conscience" claim under the "strict scrutiny" test. Because the protections afforded by the Texas Constitution are greater than those afforded by the First Amendment, and because the test articulated in *Employment Division v. Smith* is not appropriate in this case, this court should apply the traditional strict scrutiny test to this constitutional challenge, i.e., a statute that substantially burdens an individual's "rights of conscience in matters of reli-

gion" must be justified by a compelling state interest and utilize means narrowly tailored to achieve that interest. At least one other Texas court of appeals has applied the compelling interest/least restrictive alternative analysis to a "rights of conscience" claim. *See id.* at 757.

To demonstrate a violation of "rights of conscience" under Article I, Section 6, the party asserting the constitutional challenge must first show that the government "control" or "interference" with religious conscience substantially burdens the exercise of that person's religious beliefs. Once the challenger establishes "substantial burden," then there must be a showing of "a compelling state interest behind the regulation and the lack of a less restrictive alternative." *Id.* at 758. The scrutinization of the legitimate ends of a couple's marriage and the court's ability to engage in unfettered inquiry into matters that impact the teachings of religious faith substantially burden Mr. Waite's rights of conscience in matters of religion. Mrs. Waite offered no evidence demonstrating any compelling state interest for the inquiry nor did she undertake to establish that there is no less restrictive alternative to achieve such an interest. However, in her appellee's brief, Mrs. Waite suggests two "compelling interests": (1) to protect "unhappy spouses from a 'lifetime in prison from which there is no parole,'" citing *Trickey v. Trickey,* 642 S.W.2d 47, 50 (Tex. App.—Fort Worth 1982, writ dism'd) and (2) maintaining uniform family laws.

The first reason evinces a lack of understanding of the nature of the problem. The constitutional defect in the statute is not that it permits a no-fault divorce but that it conditions the entitlement to one on an impermissible inquiry into the legitimate ends of a religious institution. Clearly, the Texas legislature could fashion a statute that would entitle a petitioning

spouse to a no-fault divorce without inquiring into the religious convictions of the parties to the marriage.

The second proffered "compelling reason" for the no-fault divorce statute, maintaining uniform family laws, can be a legitimate objective for state legislatures, but it hardly rises to the level of a "compelling reason" justifying infringement on highly cherished "rights of conscience in matters of religion." Moreover, there is no uniformity among the fifty states with regard to the statutory language at issue here. Every state in the country has some form of no-fault divorce statute, but very few states utilize the "legitimate ends of the marital relationship" language.[8]

Moreover, less restrictive alternatives are available. The Texas legislature could formulate any number of legal standards for obtaining a no-fault divorce that would not require the government to make impermissible inquiries into matters of religious conscience and would not require a party defending the marriage against a petition for no-fault divorce to show that the "legitimate ends of the marital relationship" have not been destroyed.

Because there is no compelling state interest for the governmental intrusion on "rights of conscience in matters of religion," and because there are less restrictive alternatives, Texas Family Code Section 6.001 is unconstitutional and cannot stand. *See Howell,* 723 S.W.2d at 757. Accordingly, Mr. Waite's challenge to the Texas no-fault divorce statute under the "rights of conscience" guaranty of our state constitution should be sustained.

## CONCLUSION

As the elected representatives of the people, the Texas legislature has the power and authority to enact a no-fault divorce law. However, in doing so, it is constrained by our state's constitution, which emphatically proclaims that the government ought not control or interfere with Texans' rights of conscience in matters of religion. Because the Texas no-fault divorce statute compels Texas courts to make impermissible inquiries that control or interfere with "rights of conscience in matters of religion," it violates Article I, Section 6 of the Texas Constitution. There is no compelling state interest to justify the infringement on these invaluable rights, and there are less restrictive alternatives. Accordingly, this court should sustain Mr. Waite's challenge to the Texas no-fault divorce statute under Article I, Section 6 of the Texas Constitution.

---

8. Research reveals that of the fifty states, only Michigan and Iowa have no-fault divorce statutes with wording similar to that of Texas Family Code section 6.001, which conditions entitlement to the no-fault divorce on a finding that discord or conflict of personalities destroys the "legitimate ends of the marital relationship." *See* IOWA CODE ANN. § 598.17 (West 2000); MICH. COMP. LAWS ANN. § 552.6 (West 2001). Some states have more objective and secular legal standards as the only grounds for a no-fault divorce, using criteria such as the spouses having lived apart from each other for a certain period of time (e.g., 12 or 18 months). *See, e.g.,* N.C. GEN.STAT. § 50–6 (2000). Other states use language such as "irreconcilable differences," "incompatibility," or "the marriage is irretrievably broken." *See, e.g.,* WYO. STAT. ANN. § 20–2–104 (Michie 2001) (irreconcilable differences); KAN. STAT. ANN. § 60–1601 (2000) (incompatibility); FLA. STAT. ANN. § 61.052 (West 2000) (irretrievably broken). Some states allow divorce under more than one of the foregoing grounds. *See, e.g.,* NEV.REV.STAT. 125 .010 (1999) (incompatibility or living apart without cohabitation for one year). For example, even in the absence of Texas Family Code section 6.001, a no-fault divorce is available in Texas "if the spouses have lived apart without cohabitation for at least three years." TEX. FAM.CODE ANN. § 6.006.